Day, J.
I. Does this statute confer upon the city of Burlington authority to sell lots for taxes, delinquent at the time of its passage ?
Prior to its enactment, it is conceded, such authority did not exist. TTnder the law then in operation, the city was obliged to enforce delinquent taxes through the interposition of the courts. This mode has generally been found unsatisfactory and inadequate to the purpose of raising a revenue. A more summary and expeditious manner of collecting taxes is essential to the purposes of government. The law, as it stood, failing to supply this summary procedure, was defective. To remedy this defect, the statute in question was enacted. Hence it is remedial in its nature. It is a canon of construction of a remedial statute, that three things are to be considered — the old law, the mischief and the remedy; that is, how the law stood at the making of the act, what the mischief was for which the law did not provide, and what remedy for this mischief has been provided. And it is the business of the courts so to construe the act as to suppress the mischief and ad *226 vanee the remedy. 1 Black. Com.* 87. Applying this rule of construction to the statute in question, it cannot fairly be claimed that the collection of taxes delinquent at the time of its passage was beyond the legislative intent. The mischief applied to taxes then due with as much force as those to become due.
Can it, then, reasonably be supposed that, when the attention of the legislature was directed to this subject, they intended to remove the mischief only in part, and to provide only partial.relief ? The terms of the statute itself seem to lead to a different conclusion. The last clause of the statute is: “ but no deed heretofore given by city authorities, where there was no legal power to sell, shall be considered valid by any thing herein contained.” It would be a much more unlikely construction of this statute to hold that it legalized a deed, already made under an unauthorized sale, than to hold that it authorized a sale for taxes delinquent at the time of its passage. Yet the legislature felt called upon to guard against the former construction, and remained silent as to the latter. Should no significance be attached to this silence ? Does it not amount to a tacit declaration that the latter purpose was within the legislative intent? When the attention of the legislature was challenged to the necessity of making exceptions to this act, if they intended the one insisted upon by appellant, why did they not further say, “ and nothing in this act contained shall authorize a sale for taxes heretofore levied and now delinquent ? ” It is fair to suppose that the only exception intended was specified in the act. JExpressio rniius est exol/usio alterwis.
To allow this statute to operate upon a delinquency existing at the time of its passage, and continuing till after it went into operation, neither violates any rule of construction nor invades any principle of justice. The objection to retrospective statutes does not apply to remedial statutes which may be of a retrospective nature, provided *227 they do not impair contracts or disturb absolute vested rights, and only go to confirm rights already existing, and in furtherance of the remedy, by curing defects and adding to the means of enforcing existing obligations. 1 Kent, *356. In the case of Bartruff v. Remey, Justice Lowe, announcing the decision of the court, holds this language: “We remark, first, that there is a class of cases or objects requiring legislative relief or assistance, in which it is not only competent, but where, from considerations of a controlling public necessity, it would seem to be the dictate of wisdom that the law-making body should give to their enactments a retrospective operation. Aside from this class of cases, within which the statute in question does not fall, the general tendency of the judicial mind has been, and that, too, with great steadiness of purpose, both in England and this country, to hold that, unless the retrospective intention of the legislature is already expressed upon the face of the enactment, it shall be deemed to commence in future.” 15 Iowa, 257. The deduction is a logical one, that, in the first class of cases, the retrospective intent may appear without such expressed declaration; and although in that case the statute under consideration was declared not to be retrospective, yet a construction was placed upon it which fully justifies the application of this statute to existing delinquencies. The statute in that case construed was section 18, chapter 173, laws of 1862, increasing penalties upon delinquent taxes. While the court held that it did not affect the penalty for past years upon delinquencies existing at the time of its passage, yet it was held that, if the delinquency continued after its passage, the continued default constituted a new delinquency to which the statute applied. That decision recognizes a principle which justifies the view which we adopt, that the present statute authorizes a sale for taxes due at the time of its passage, and continuing delinquent thereafter. Bartruff v. Remey, 15 Iowa, 257. -
*228 II. It is objected, however, that this statute, if it receive this construction, is unconstitutional.
1. It is claimed that it is in violation of section 30, article 3 of the constitution, which provides that “ the general assembly shall not pass local or special laws for the incorporation of cities and towns,” and that “ all laws shall be general and of uniform operation throughout the State.” This objection deserves consideration, for, if tenable, it invalidates the law aá well in reference to taxes hereafter to become due, as to those already due. The statute is for the benefit of cities and towns heretofore incorporated under special acts and charters. As such cities were few, at the time of the passage of this act, and hence but few cities were affected by its provisions, it is claimed that the statute is local and special, and has not a uniform operar tion throughout the State. This position is believed to be unsound. The argument advanced proves too much, and is therefore a felo de se. The general incorporation law of 1858 (Eev. chap. 51) divides municipal corporations into cities of the first and cities of the second class, and incorporated towns. Each of these differs from the others in powers, in rights, and mode of government. A city of the first class is one' containing fifteen thousand inhabitants. Tet no one has thought of denying the constitutionality of the law, because, at the time of its passage, it did not affect inore than one or two, and does not now affect any considerable number of, cities in the State. And suppose that this statute should undergo further modifications, and it should be provided that a city of the first class should contain twenty thousand inhabitants. Woxild it be a special or local law, failing of uniform operation because but one city in the State would fall within its provisions ? And yet this consequence must be conceded if the act in question is amenable to the objection named. The consequence of appellant’s argument would go even much further than this. For, as the distinctive features *229 of the law applicable to cities of the first class would not apply to cities of the second class, and vice versa, these provisions would fail of urviform application, and be unconstitutional, without regard to the number of cities in either class. Hence it would follow, that the legislature has no power to organize cities in classes, but must apply the same provisions to all. The true construction seems to be, that the act in question operates upon a particular condition, and attaches to it certain consequences, and that whenever that condition exists the consequences follow. So that wherever cities are found, in whatever por tion of the State, be they few or many, which were, incorporated under special charters, to them the law applies. And it applies to all cities in the State falling within the class specified, and, hence, is not local nor special, but of uniform operation. The point ruled in Ex parte Pritz, 9 Iowa, 30, is not in conflict with these views. The statute there considered was one to amend an act for the incorporation of the city of Davenport. It affected a single city; this an entire class. See also Von Phul v. Hammer, 29 Iowa, 222.
2. It is further insisted that the law in question is unconstitutionalj because it impairs the obligation of the contract between the parties, and interferes with settled and vested rights. It is difficult to perceive the force of this objection. What the contract, who the parties, what the obligation, and how impaired, is not very apparent. By his purchase from the government, complainant acquired dominion over the property purchased, subject to the sovereign right of the government to subject it to taxation for all lawful purposes.
And, as the right of taxation is a sovereign one, without the exercise of which no government can be maintained, the continuance of it must be understood to have formed part of the contract of purchase. It cannot be maintained that at the time the purchase was made there was any *230 implied, agreement, upon the part of the government, not to change the objects or rate of taxation, or the mode of enforcing collection.
With such restraints placed upon the exercise of the power of taxation, it would be shorn of half the attributes of sovereignty, and made subject to the control of every property owner. And we think there is as little propriety in the position that a law in force at the time a tax was levied may not be altered or amended so as to authorize its collection in a mode different from that prescribed by the law at the time it became delinquent. From such a construction, it would result that a tax levied and delinquent under a law making no adequate provision for its collection could never be enforced.
If there is any thing between the government and the purchaser, in regard to taxes, partaking of the nature of a contract, it is the implied agreement that, in consideration of the protection which government affords, he will pay •whatever taxes the government finds necessary for its own maintenance. And this agreement he enters into, in view of the fact that the application of the right to tax is the highest exercise of sovereign power; one which, from its nature, is as unlimited as the necessities of the government.
The same line of argument which would establish that the mode of enforcing a tax, in existence at the time of the purchase, enters into the contract of sale,- and formed a part of its obligation, would also prove that the rate of tax imposed at the time of purchase forms part of the agreement, and cannot afterward be increased. No one could be found bold enough to maintain such a doctrine. The obligation of the contract between the citizen and the government is allegiance on the one part, and protection upon the other. This obligation to protect is not impaired by a change in the mode of enforcing a tax. In fact, Üie power to protect may depend upon such change.
In the case of Negus v. Yancey & Smith, 22 Iowa, 57, *231 Lowe, Ch. J., said: “ The competency of the legislature to change and modify, at all times, the provisions of its revenue law is too clear > to be questioned. If this change should impose new terms and conditions in the collection of the taxes already delinquent, upon what ground can the defaulting tax payer complain % ”
In that case, after the taxes became delinquent, and before the sale, the time for redemption was diminished from five to three years. The law was held applicable to prior delinquencies.
The judgment of the district court is
Affirmed.