## The Iowa Railroad Land Co. v. Soper et al.

1. **Constitutional law:** LOCAL AND SPECIAL LAWS. A law which refers to a certain relation or condition, and operates upon all standing in that relation, is not a special but a general law, within the meaning of the constitution. Uniformity is attained by its operation upon all persons in the like situation. (*Haskel v. The City of Burlington*, 30 Iowa, 232; *McAunich v. The M. & M. R Co.*, 20 Iowa, 338.)

2. ————: ————: JUDGMENT TAXES. The act of the Fourteenth General Assembly, which legalizes certain judgment taxes levied by counties and other municipal corporations and authorizes their collection, was *held* to be a general law, not in conflict with Sec. 30, Art. 3, of the Constitution.

3. ————: ————. The act in question being general, it is not material that it relates to the "assessment and collection of taxes."

4. ————: LEGISLATURE MAY PASS RETROSPECTIVE LAWS. In the absence of any constitutional inhibition, the legislature has the power to pass retrospective or retroactive laws, and they will be declared inoperative only when they interfere with vested rights. Such laws, as distinguished from *ex post facto* laws, are not unconstitutional.

5. ————: TAXES: A VOID LEVY MAY BE LEGALIZED. Taxes levied without authority of law may be rendered legal and valid by a subsequent legislative enactment. Following *Boardman v. Beckwith*, 18 Iowa, 292.

6. ————: TAXES: CURATIVE ACT. Since the legislature has the power to pass a general law for the levy and collection of special taxes, for the purpose of paying judgments, without limitation as to rate, it may rightfully legalize levies in excess of lawful authority at the time they are made.

7. ————: ————: ————. A legislative act which legalizes a tax before invalid and uncollectible, does not impair any vested right of the tax payer.

8. ————: CURATIVE ACT. The distinction between legislation which attempts to cure the acts of officers void for informality or mistake, and that which seeks to legalize official acts void for want of authority, is not recognized in this State.

9. ————: TAXATION: POWER OF JUDICIARY. The power of taxation is vested in the General Assembly, but an act which legalizes taxes before irregular and void, is not an exercise of judicial power.

*Appeal from Carroll District Court.*

TUESDAY, JUNE 30.

ON the 7th day of April, 1874, the plaintiff filed in the District Court its petition alleging that it is a corporation organized under the laws of the State of Iowa; that the defendants constitute the Board of Supervisors of Carroll county; that for the year 1871 said board levied upon all the property in the county, including a large quantity of lands belonging to the plaintiff, county judgment taxes for the purpose of paying certain judgments rendered against the county prior thereto, founded upon the ordinary warrants of the county issued for the ordinary expenses thereof, and not issued by virtue of a vote of the people of the county for any extraordinary expenditure, or for any work of internal improvement; which judgment taxes were in addition to the maximum levy of four mills on the dollar valuation, levied by said board in 1871, and paid by plaintiff, and the only tax for ordinary county purposes allowed or authorized by law for that year; that the board caused such judgment tax to be charged against the lands of the plaintiff in said county on the tax books thereof, and the treasurer of the county exacted from plaintiff payment of the same, which, on the 25th day of January, 1872, the plaintiff paid, being the sum of sixteen hundred and forty-four dollars and fifty-four cents; which, it is alleged, was the amount of the illegal and unauthorized judgment taxes charged against plaintiff. A demand by plaintiff for the refunding of the money so paid, and a refusal to do so, are alleged, and a writ of mandamus is prayed to compel the refunding to the plaintiff of the alleged illegal tax so paid.

Defendants demurred to the petition. The court sustained the demurrer, and the plaintiff refusing to amend, judgment was entered dismissing the petition. Plaintiff appeals.

*E. S. Bailey* and *N. M. Hubbard*, for appellant.

*J. C. Kelly* and *Holmes & Reynolds*, for appellees.

MILLER, CH. J.—At the June term, 1873, this court filed its opinion holding (COLE, J., *dissenting*,) in *The Iowa Railroad Land Company v. Sac County et al.*, that under the statutes of Iowa then in force, the county Board of Supervisors having levied the maximum tax of four mills on the dollar of valuation for ordinary county revenue, had no power or authority to levy a further tax upon the taxable property in the county for the purpose of paying a judgment rendered against the county upon its ordinary county warrants. A rehearing was asked by the plaintiff and granted upon other questions in the case decided adversely to it. Pending such petition and prior to the commencement of this action, namely, on the 18th of March, 1874, the General Assembly passed the following act:

" *An Act to legalize certain judgment-taxes levied by counties and other municipal corporations in the State of Iowa:*

WHEREAS, Judgments have been rendered both in the State and Federal Courts against various counties, school districts, and other municipal corporations; and,

WHEREAS, Such corporations, claiming the right to do so under section 3275 of the Revision of 1860, and the amendments thereto, have levied special taxes to pay the same; and,

WHEREAS, Doubts have arisen as to the power to levy such taxes under the law; and,

WHEREAS, Many of the tax-payers have paid such taxes, and it is the interest of such corporations that all of such taxes be collected, and said judgments paid off; now, therefore,

SECTION 1. *Be it enacted by the General Assembly of the State of Iowa*, That such judgment taxes, so levied by such corporations, be, and the same are hereby declared legal and valid, and where the same have not been paid, the officers of such corporations are hereby empowered and directed to proceed at once to collect the same as other taxes are collected, and pay the same over to the parties entitled thereto."

The second section of the act provides for its taking effect upon publication in certain newspapers.

The principal ground of the demurrer to the petition is in effect that, whatever illegality may have existed in the levy of

the taxes mentioned in plaintiff's petition as illegal and unauthorized, it was, before the commencement of this action, cured, and the alleged illegal taxes rendered legal, and their collection authorized by the above act.

I. Appellant insists that the act is invalid, first, because it is in contravention of section 30, of Article 3, of the Constitution. This section provides " that the General Assembly shall not pass local or special laws in the following cases: For the assessment and collection of taxes for State, county, or road purposes." *

1. CONSTITU-
TIONAL LAW :
local and
special laws.

* * It is claimed that the act in question is a special law within the meaning of this clause of the Constitution, that it operate upon particular corporations only, and does not affect all in the State.

In 1868, the legislature passed an act providing in substance that all cities and towns theretofore incorporated under special acts and charters, and which did not then possess the power to sell personal and real property for the collection of delinquent taxes, should thereafter have and possess such power. In *Haskel v. The City of Burlington*, 30 Iowa, 232, the constitutionality of this act was brought in question. It was urged that it was a special law, since it did not apply to all the cities in the State, and was therefore in conflict with the above article of the Constitution, wherein it prohibits the General Assembly from passing " local or special laws for the incorporation of cities and towns." The act, however, was held constitutional, and the true construction of the act declared to be that it operated upon a particular condition, and attached to it certain consequences, and that, whenever that condition existed, the consequences follow. The principle involved in that case was the same as in the one before us. In this case the act of the General Assembly operated upon a particular condition; that is, in all municipal corporations where they have, before the passage of the act, levied special taxes in excess of the maximum allowed by law to pay judgments, the consequences which are named in the act follow, namely, such taxes are declared legal and valid. As in *Haskel v. The City of Burlington, supra*, the act applied " to *all cities* in the State fall-

ing within the class specified, and hence was not local nor special, but of uniform operation." So, in this case, the act applies to all "counties, school districts, or other municipal corporations," falling within the conditions mentioned in the act; and it is, therefore, not a local or special law, but general. It is very clear that if every municipal corporation within the State had levied taxes to pay judgments, which levies had been in excess of the maximum amount fixed by law, the act under consideration would have applied to them all alike. In other words, if the condition described in the act had existed, in every corporation in the State, the act would have been applicable to them all.

In *McAunich v. The M. & M. R. Co.*, 20 Iowa, the same doctrine is held as in *Haskel v. City of Burlington, supra.* It was there held that the number of citizens affected by a law does not control its validity, under § 6, Art. 1, and § 30 of Art. 3 of the constitution; that if the law operates upon every person within the relations or circumstances provided for, it is sufficient as to uniformity. The statute under consideration in that case was the seventh section of chapter 169, of the Laws of 1862, which defined the duties and liabilities of railroad corporations to their employes. The court, per COLE, J., speaking of these laws which apply to classes or conditions of persons and things, says: "these laws are general and uniform, not because they operate upon every person in the State, for they do not, but because every person who is brought within the relations and circumstances specified is affected by the law. They are general and uniform in their operation upon all persons in the like situation." See, also, *U. S. Express Company v. Ellyson*, 28 Iowa, 370; *Van Phul v. Hammer*, 29 Id., 222.

When we apply the principle of these cases to the act under consideration, it is plain that it is a general law and not a local or special one. Holding the act to be general in its operation we need not inquire whether it is a law for the assessment and collection of taxes.

2. ——: judgment taxes.

3. ——:——.

II. It is insisted further that the act in question is void

The Iowa Railroad Land Co. v. Soper.

because it is retrospective and impairs vested rights and with-out reasonable cause imposes upon third persons new duties in respect to past transactions. In *Bennett v. Fisher*, 26 Iowa, 497, it is held that there is nothing in our constitution prohibiting, in terms, the enactment of retrospective laws, and that such laws are valid, unless they violate some of the provisions of the national or state constitutions. In that case an act was upheld as valid which legalized the establishment of certain county roads which were illegal and void because the commissioners had been appointed by the clerk without authority. *State v. Kimball*, 23 Iowa, 531.

4. ——: legislature may pass retrospective laws.

In *The State v. Squires*, Id., 340, it was held that retrospective laws, as distinguished from *ex post facto* laws, are not in conflict with the constitution of the United States, nor of this State; that in the absence of any constitutional inhibition, a state legislature has the power to pass retrospective or retroactive laws, and that they will be declared inoperative only when they disturb or interfere with vested rights. In that case a curative act legalizing the defective organization of a school district was held constitutional and valid. The doctrine of these cases is well settled by numerous decisions of this court. See, *Davis v. O'Ferrall*, 4 G. Greene, 168, 358; *Phares v. Walters*, 6 Iowa, 106; *Montgomery v. Chadwick*, 7 Id., 114; *McMillen v. Boyles*, 6 Id., 304, and cases cited; *Newman v. Samuels*, 17 Id., 528; *Boardman v. Beckwith*, 18 Id., 292.

We are unable to see wherein the act interferes with any vested rights of the plaintiff. The case of *Boardman v. Beckwith* is in point here. The general law of March 22, 1858, relating to revenue, (Laws of 1858, Ch. 152), repealed all prior acts in conflict therewith. It took effect July 4, 1858. This act omitted to make any provision for the levy of taxes for 1858. At the next session of the General Assembly an act was passed (April 2, 1860) to enforce the collection of the delinquent taxes of 1858, which, in the preamble, refers to the act of March 22, 1858, and the omission therein, and reciting that taxes were assessed and levied

5. ——: taxes: void levy may be legalized.

in pursuance with the laws in force prior to 1858, etc. Then follows an enactment legalizing such levies and assessments with the like effect as if chapter 152 had not been enacted and declaring it lawful for, and the duty of, the proper officers to proceed to collect the taxes thus legalized, as in other cases of delinquent taxes assessed according to law. This act, although it was retrospective and legalized taxes which were levied without any shadow of legal authority, and the levies were therefore utterly void, was held constitutional and operative. The court, per WRIGHT, Ch. J., says: "That it is competent to thus legislate we entertain no doubt. The power of the legislature to pass acts of this character, conducive as they are to the general welfare, and based upon considerations of controlling public necessity, is, in our opinion, undoubted. *It does not interfere with vested rights*, nor impair the obligation of any contract."

It seems to us that there is no ground for distinction between that case and the one before us. The act of 1874 purports to render legal and valid certain tax levies which were not legal and valid at the time of the levies, so did the act of April 2, 1860.

It is urged that the judgment taxes, attempted to be legalized in this case, were absolutely void, because they were levied in excess of lawful authority, and that therefore the General Assembly cannot by a retrospective act, give validity to such void levies. In *Boardman v. Beckwith, supra*, the taxes levied for the year 1858, were levied without any lawful authority whatever. The levies were not simply in excess of lawful authority, as in this case, but were made without any authority to make them, and it was held that the act of April 2, 1860, passed to cure and render legal and valid these illegal and void levies, was constitutional, valid and operative, and rendered the taxes levied in 1858, without any authority of law, collectible.

If it was competent for the General Assembly to pass the act above referred to, whereby the illegal and void taxes levied in 1858 were legalized and their collection authorized, it was likewise competent for the legislature to pass the act under

consideration, and thereby make the taxes to pay judgments, which had been levied in excess of legal authority, valid and collectible. · There is no valid argument to sustain the former which does not apply to and sustain the latter act. In both cases it is a question of power and not one of policy. Of the power to pass the act in question, we entertain no doubt.

This power of the legislature to cure defective or irregular proceedings is not limited by the fact that, but for such curative act, the defective proceeding would be wholly invalid or inoperative; *The State v. Squires, supra,* and cases cited on p. 348. "Nor is it material that a cause was pending involving the question of the validity of the proceeding sought to be cured, when the act curing it was passed." Ibid. See also *Allen v. Archer,* 49 Maine, 346; *Winchester v. Inhabitants of Corina,* 55 Id., 9; *Walter v. Bacon,* 8 Mass., 468, 472; *Fowler v. Select Men, etc.,* 8 Allen, 80; *Baldwin v. The Town of North Bedford,* 32 Conn., 47; *City of Bridgeport v. H. R. Co.,* 15 Conn., 475; *Scofield v. Watkins,* 22 Ills., 66, 73; *Cowgill v. Long,* 15 Id., 202; *Weisler et al. v. Hade,* 52 Penn. St., 474; *Cass Township v. Dillon,* 16 Ohio St., 38; *The State ex rel. Baker v. Scudder,* 3 Vroom, 203; *Walpole v Elliott,* 18 Ind., 258; *Welch v. Wadsworth,* 30 Conn., 149.

There can be no doubt that the General Assembly had the power, and might have enacted a law under which the vari-

6. ——:taxes: curative act.

ous municipal corporations in the State would have been authorized to levy and collect the taxes in question. In other words, the authority to levy and collect taxes to pay judgments against municpal corporations could have been conferred by a general law without any limitation therein as to the rate, so that the taxes, legalized by the act under consideration, would have been authorized and valid. Having the power to authorize, by general law, the levy and collection of special taxes, by municipal corporations, without limitation as to rate, for the purpose of paying judgments, the legislature may rightfully legalize or cure the levies made in excess of lawful authority at the time; *The State v. Squires, supra; Bennett v. Fisher, supra; McMillen v. Boyle, County*

*Judge*, 6 Iowa, 304, and cases cited in brief of appellee's counsel; *Dubuque Female College v. Township of Dubuque*, 13 Id., 558.

When it is conceded that the General Assembly has the power to pass an act conferring authority upon municipal corporations to levy taxes, it necessarily follows that the same power may cure or ratify and make valid the taxes levied without such prior authority, unless vested rights are thereby impaired. *Thompson v. Lee County*, 3 Wallace, 327.

We have read and examined the numerous cases cited by appellants, and find them generally in accord with the cases in this court above cited. While we should feel compelled to follow the cases in our own court, which, it seems to us, clearly cover every question in this case, and bring us to the conclusions above reached, yet we will notice some of the cases relied upon most confidently by appellants' counsel. The case which they denominate the leading one in support of the claim that the act impairs vested rights, is *Dash v. Van Kleeck*, 7 Johns, 477. In that case the sheriff suffered a prisoner in his custody on execution to escape, upon which, under the law then in force, the sheriff became liable to the creditor. The prisoner returned to the custody of the sheriff, who, on going out of office, assigned him to his successor, and while in his custody the prisoner applied for his discharge under an act for the relief of debtors, etc.; and the plaintiff, not knowing of the escape, opposed the application, in consequence of which the debtor remained in custody. After the institution of the action against the sheriff who suffered the escape, an act was passed by the legislature permitting sheriffs to plead the prisoner's return to custody as a defense to an action for an escape; it was held that this act did not operate retrospectively, so as to divest the vested right of action which accrued to the plaintiff by the escape. SPENCER and GATES, JJ., dissenting.

The ground upon which the court bases the decision is, that, as the sheriff, in suffering his prisoner to escape, became liable absolutely to the plaintiff for the debt, such liability was a vested right which could not be taken away by a retroactive law. In this holding there is nothing inconsistent with the

views we have expressed above.   Wherever a vested right of property is attempted to be divested by a retrospective act of the legislature, it has been generally held invalid by the courts, and to this effect are most of the cases cited by appellants.

But the legalizing of a tax, which but for the legalizing act was invalid and not capable of being enforced, does not interfere with any vested right of the tax-payer.   It is argued that before the passage of the curative act, the plaintiff had a right of action to recover back the illegal taxes paid, and that this is a vested right.   It is no more a vested right than in case the plaintiff had not paid the taxes. He would in such case have as good grounds for resisting payment, as, after payment, he could have to recover the money paid.   And this is no *vested* right at all.   Before taxes are, assessed against the property of the tax-payer, in accordance with a statute for that purpose, he may lawfully claim the right to resist a claim made upon him for taxes not thus assessed.   He has a right of action to enjoin the sale of his lands, or may replevy his personal property if seized for illegal taxes.   But upon the regular levy of taxes in pursuance of a legislative enactment, his rights in this respect are changed. His right to resist the payment of the taxes is gone.   The statute has created a liability to pay where none existed before, its passage, and this is so whether the act authorizing the tax levies be passed prior thereto or is an act legalizing a tax previously levied.   In either case the power of the General Assembly to pass the law is the same.   If it has no power to legalize a tax already levied without authority, it has no power to confer the authority in the first instance.   If the right to resist the payment of taxes assessed without authority of law is a vested right which cannot be taken away by any legislative act, then the legislature has no power to tax at all, for every statute which provides for taxing the persons or property of the citizens has the effect to create liabilities where none existed before the passage of the statute.   If, therefore, the prior non-liability be a vested right that cannot be impaired by legislative enactment, then there is no power in the State to levy or collect taxes.   It is plain from these con

siderations that no vested rights are impaired by the passage of the act in question in this case.

The case of *The Commissioners of Shawnee County v. Carter*, 2 Kansas, 115, is a case holding that an act of the legislature confirming the acts of the commissioners, in issuing certain bonds which were invalid, was unconstitutional on the ground that "it retroactively disposed in favor of a particular individual, with general rules governing similar cases, to the manifest injury of other parties." Herein the case is not inconsistent with our conclusions in this case. The court in that case, however, in argument attempts to distinguish between retrospective laws which are passed to supply defects, and cure informalities in proceedings of officers and tribunals acting within the scope of their authority, and laws which are intended to cure or legalize the acts of such officers done without the scope of their authority, holding that retroactive legislation is legal and valid to cure the acts of officers void for informality, irregularity or mistake, but that such legislation is not valid where it attempts to legalize and validate official acts, void for want of power or authority to perform them. We have already seen that such is not the rule established by the cases decided in this court, and which are above cited. There is no foundation for the above distinction, under our decisions.

8. ——: curative acts.

In the case of *Menges v. Deutler*, 33 Penn. St., 495, the plaintiff's father was, in 1833, the owner of 408 acres of land lying partly in Lycoming and partly in Northumberland counties, at which time he executed a mortgage upon the same to one Parker for $800, which was recorded in Lycoming county. In 1839, suit was brought and judgment obtained on the mortgage in Lycoming county, the property sold at sheriff's sale, and deed made by him to George Oyster for the entire tract, describing the same as lying in the two counties. The purchaser took possession but in a suit by the heirs of the mortgagor, who had deceased, it was decided that no title passed by the sheriff's sale and the heirs had judgment for the land.

In 1843, the legislature passed an act declaring the sheriff's deed to be good and valid, and it was held that this act was

unconstitutional because it divested vested rights of property, and professed to reverse and overturn a solemn judgment of the Supreme Court. We find no difficulty in subscribing to the doctrine of this decision, and see nothing therein in conflict with the conclusions of this opinion.

The case of *Hart v. Henderson*, 17 Mich. 218, holds that the legislature has power to correct any mere irregularity in the proceedings for the assessment, and collection of taxes authorized by law, but when the original tax was levied without any authority of law, no subsequent legislation can make it a legal demand. This is the only case we have been able to·find, (except the Kansas case above referred to,) holding this doctrine, and it is in direct and palpable conflict with *Boardman v. Beckwith, supra*, and other Iowa cases cited. It is also in conflict with the following cases; *Winchester v. Corina*, 55 Maine, 9; *The State ex rel. v. Scudder*, 3 Vroom, 203; *Bellows v. Weeks*, 41 Vt., 390; *Walpole v. Elliott*, 18 Ind., 258; *Thames Manuf. Co. v. Lathrop*, 7 Conn., 550.

We discover nothing in any of the other numerous cases cited by the learned counsel for appellant that demands a review thereof at our hands. As we understand them, they hold no doctrines conflicting with the decisions we have cited from our own reports, or not in accord with the views and conclusions we have herein expressed.

III. It is further claimed that the act under consideration is an intended exercise of judicial power, and, therefore, unconstitutional and void.

The exercise of judicial power is not within the constitutional authority of the General Assembly. That power is confided to the courts organized and established as designated in the Constitution, Art. 5, Sec. 1.

9. ——: taxation: power of judiciary.

When vested rights are divested by legislative acts of this ·character, they will be adjudged inoperative and void by the courts. Bagg's Appeal, 7 Wright, (44 Pa. St.) 512. But the act under consideration does not fall within this character of legislation. The power of taxation is a necessary and indispensable incident to every government. It is "one of the sovereign powers of the State vested in the General Assem-

bly," and is exercised by it without the aid of the courts, except where it calls in that aid in the collection of the revenue. *Stewart v. Board of Supervisors etc.*, 30 Iowa, 9, and cases cited; *Grim v. Weisenburg School District*, 57 Penn. St., 433.

We have seen that the General Assembly possesses the power to cure and render legal and valid, by subsequent laws, defective or irregular proceedings, wherever it would have the power to authorize such proceedings in the first instance. Since, therefore, it is within the proper scope of legislative authority to pass general laws for the assessment and collection of taxes, the passage of a general law curing and legalizing the levy and collection of taxes irregularly or illegally levied, is also an exercise of legislative authority as essentially as is the passage of an original act authorizing the taxation. Such is the character of the act we are considering. It does not encroach upon the domain of judicial power, but it is clearly within the scope of legitimate legislative authority. It legalized the taxes levied to pay judgments in the various municipal corporations, which taxes were not legal and collectible prior to the passage of the act, because of a want of lawful authority to levy the same. The court did not err, therefore, in sustaining the demurrer, and its judgment must be affirmed.

AFFIRMED.