THE KING *vs.* AUG. C. FERNANDEZ.

APPEAL FROM THE POLICE COURT OF HONOLULU.

HEARD BY CONSENT, DECEMBER, 1888.

JUDD, C.J., McCULLY, PRESTON and BICKERTON, JJ. DOLE, J.,
Dissenting.

Section 1 of Chapter LXVII. of the Laws of 1888, is pronounced un-
constitutional and void, because :

1. The Act being entitled "An Act to better Prevent Illicit Traffic in
Spirituous Liquors," this section provides that the mere pos-
session at his place of business, by a person whose business requires
a license, of liquor beyond a certain small prescribed quantity is
an offense, without regard to an intent to traffic therein. This
offense not being indicated by the title of the Act, it does not
conform to the requirement of Article 77 of the Constitution.

2. The provisions of said section are not within the proper compass of
the Police Power of the State, and establish an arbitrary dis-
crimination against a class of persons, in violation of the equal
property rights guaranteed by Article 1 of the Constitution.

OPINION OF THE COURT, BY McCULLY, J.

The defendant appeals from a conviction in the Police Court
of Honolulu, for keeping on his premises, in Honolulu, on the
5th of November, 1888, on King street, five gallons of spirituous
liquor, to wit, of Madeira wine and beer, contrary to the pro-
visions of Section 1 of Chapter LXVII., of the Acts of 1888, the
defendant being a licensed storekeeper.

The defendant admitted the facts charged, but claims that
they do not constitute a criminal offense under the Constitution
and Laws of the Hawaiian Islands.

The statute is entitled "An Act to better Prevent Illicit
Traffic in Spirituous Liquors."

Section 1 is as follows : "It shall be unlawful from and after
the passage of this Act, for any person or persons conducting or
carrying on any business or trade, for the carrying on of which

a license is required by the Government, or for any other person except druggists, physicians and licensed dealers in spirituous liquors, to have or keep or permit on or about the premises where such business or any portion thereof is carried on, or where any portion of the stock used or kept for such business is stored, any spirituous liquors, except for the use of those engaged on the premises, and which shall not exceed at any time one-half-gallon of wine or beer, or one quart of ardent spirits. The definition of the term spirituous liquor herein shall be the same as is contained in Section 2 of Chapter LXIV. of the Laws of 1882."

It is strongly contended by defendant's counsel that the section has no sensible and consistent meaning, and that the strict reading of its clauses yields only absurdities.

It cannot be denied that the statute is so lacking in plain meaning that it requires close examination to determine what is herein enacted.

What scope and effect is to be given to the words "for any other person except," etc. ? If we make a parenthesis about the excepted matter, the thing said is that no person holding a license, and no other person, shall keep or suffer to be kept on the business premises of a licensee any spirituous liquors; druggists, physicians and licensed dealers in spirituous liquors are excepted. They are not prohibited from keeping spirituous liquors on any licensed premises, either their own or of other persons. On the other hand, the licensee shall not permit any person to keep liquor on his premises—druggists, etc., not excepted. The most favorable interpretation which will support the statute and conform to the supposed intention of the Legislature, it being presumed not to intend absurdity, is that these three excepted classes are excepted from drawing the penalty on one who permits them to do what the law allows them to do, or we may adopt the interpretation that as these three excepted classes have premises of their own, it is intended that they may keep spirituous liquors on their own premises, merely by applying liberally the rule *reddendo singula singulis*. Neither of these

interpretations is quite satisfactory to us.  But as the case before us does not touch anything in this exception, we may pass by the difficulty.

The counsel for defendant contends that the latter part of the section must be taken to mean that it shall be unlawful for any person except druggists, etc., to keep spirituous liquors on his premises unless it shall exceed the prescribed amount; but we do not find the difficulty in giving the second excepting clause a reasonable meaning.  It is an appendage.  If the sentence closed with a period after "any spirituous liquors," there would be a total prohibition.  Now there is added "except [spirituous liquors] for the use of those engaged on the premises, and which [spirituous liquors] shall not exceed," etc.  The words we have added in brackets are not requisite to supply omissions or deficiencies; what is excepted for use can mean nothing else than the immediately preceding subject, and the relative pronoun refers to its nearest antecedent.

With the view that the statute certainly enacts that the holders of business licenses shall not keep spirituous liquors on their premises except a specified small quantity for personal use, is the Act unconstitutional ?  The first section is complete in itself so far as describing and enacting a certain unlawful act.  The penalty for this is contained in the sixth section, which, in a general way, prescribes a penalty for the violation of any provision of the Act, there being sundry things prohibited in sundry sections.

What is prohibited in section first is the mere possession by licensees of spirituous liquor without intent to traffic in it.  But spirituous liquors may legally be sold, and legally bought and possessed.  This statute creates a new, distinct offense.  The possession of liquor without selling or intent to sell has hitherto been lawful.  The possession without intent to traffic is not related to the offense of illicit traffic.  How can it be said that one who possesses spirituous liquor, being legal goods in which he does not intend to traffic, and in fact never does traffic, has violated any law for the prevention of traffic ?  The title of this

Act does not, therefore, express the action which is made penal by it, mere possession without intent, etc. Article 77 of the Constitution requires that every law shall embrace but one object, and that shall be expressed in the title. The title of what is enacted in this law should be to prohibit the possession of liquor and illicit traffic in it. A comparison with other sections of the law will show the necessity of expressing that an act, lawful otherwise, must be done with unlawful intent in order to make it criminal. Section 2, prohibiting the forwarding of orders for liquor, applies only to orders with intent that the spirits shall be delivered to another person, which is a traffic. Section 3 prohibits receiving into possession spirituous liquor with intent to sell, transfer or dispose of it to others. Section 4 requires that the shipment without labels, which is prohibited, shall be with intent to deliver or traffic it to third persons. And no one of the three offenses hereby established is committed without an intent to traffic, which must therefore be affirmatively shown, and which admits of defense.

We may also illustrate the difference of this law from other legislation and the specific novelty of it, by comparison with the Act of 1882, Chapter XLIV., Section 33, which has been supposed to cover somewhat similar ground. That enacts that circumstances existing which tend to show an intent to traffic and a traffic, such as some significant sign, a fitting of a bar with its apparatus, such as to induce a reasonable belief that there is a traffic, and the possession of more spirituous liquor than is reasonably required for the use of persons residing on the premises, shall be deemed *prima facie* evidence of unlawful sale of liquor. That is to say, that it is sufficient proof, until rebutted, without evidence of particular sales. No one is punishable without such evidences of intent to commit illicit traffic. It is a statute rule of evidence.

The law we are now considering establishes as an offense that which is not illicit traffic, under a title which is confined to illicit traffic, and does not express the new offense. It must be held, therefore, that the first section contravenes Article 77 of the Constitution, and is void for this reason.

Counsel for the defendant contends that the section is in conflict with those articles of the Constitution which guarantee an eqality of rights.

The operation of this Act is confined to one class of the community, viz., those persons whose business or trade requires to be carried on under a license.

It is indisputable that the police power of the State may lawfully be applied to restrict uses of property—when the welfare or safety of the community requires it. But it will be found that these laws are of general and equal application. The Act of 1882, which we have cited above, applies to all persons. It is not only the holder of a store license, for instance, to whom the rule of evidence derived from circumstances which tend to show an illicit traffic is applied, but equally any other person to whom such circumstances attach themselves.

The law restricting the storage of kerosene applies to all persons; so do the laws relating to gunpowder, to dynamite, giant powder, etc., the law respecting nuisances and offensive or corrupt substances; and they all relate to articles and things which the public welfare, safety or health require to be guarded, restricted or suppressed.

In our view the term "dangerous" cannot be applied to spirituous liquors in the sense in which it belongs to dynamite, gunpowder, benzine, kerosene, etc., and there is a fallacy in so using it. No one will claim that the laws restricting the dealing in spirituous liquors are based on the danger from the inflammable quality of pure alcohol. We apply the same word 'danger" to the risk of acquiring an injurious or evil habit, and to the liability of destruction of persons and buildings by explosives; but they are different things. One is subjective, the other is objective. Whoever and whatever is within the circle of damage of a dynamite explosion is liable to be destroyed. Spirituous liquors are to the majority of people, and to all certainly who do not choose to partake of them, not harmful and not dangerous.

And it does not appear why the possession of spirituous liquors is dangerous to the public welfare specially, and only in the case of persons carrying on business under a license. It will be seen by examining the list of businesses required to be licensed, that there is a great variety in their character, and that many are of a description not suggesting a reason for being placed under this penal police restriction as to keeping spirituous liquors on the premises. It is not only vendors at wholesale and retail of imported goods who must be licensed, but banks, dairys, livery stables, pork butchers, sellers of salmon, sportsmen (on the Island of Oahu), cake peddlers, hacks and hack-drivers, inter-island passenger vessels, shore-boats, must be licensed. On the other hand, vendors of goods the growth or product of this Kingdom are, with few exceptions, e.g., awa, not required to take license; soda-water stands, and other vendors of home-made non-intoxicating drinks, require no license, although it would seem that the evil to be remedied might as probably be encouraged in these as in licensed businesses.

While the police power may be exercised severely within the limits of what is for the public welfare and safety, it cannot be considered lawful to make arbitrary discriminations, nor to accomplish other objects under an unfounded declaration that they are within the proper compass of this power. Mugler vs. Kansas, 123 U. S., at page 661; People vs. Gillson, 109 N. Y., 389; In Re Jacobs, 98 N. Y., 98; The King vs. Lau Kiu, lately decided in this Court, ante, page 489.

Mugler vs. Kansas, 123 U. S., has beeen cited as supporting the Crown in this case. We think there is an essential difference in the cases.

The Constitution of the State of Kansas provided that "the manufacture and sale of intoxicating liquors shall be forever prohibited in this State except for medical, scientific and mechanical purposes;" and the statute provided that all places where such are manufactured, sold, bartered or given away are common nuisances, etc. The prohibition is total, and to all classes. It is obvious that rulings of the Court on such legisla-

tion do not apply to the case where the liquor is a lawful commodity, and to the prohibition of a certain class of the community to possess it without unlawful intent.

It was submitted in argument by defendant's counsel that a condition to the effect proposed by this section might, if there were such a law, be added to licenses, with the penalty of a cancellation for breach. In view of the observations made in the recent case of *Wing Wo Chan vs. The Hawaiian Government*, *ante*, page 498, and of *The King vs. Lau Kiu*, *ante*, page 489, this seems very doubtful; but such a case is not before us. The licensees find that a law applicable only to themselves prohibits them in a common right. We consider that this is in contravention of the equal property rights guaranteed by the first article of the Constitution.

Upon these several considerations we hereby pronounce Section 1 of the Act in question void.

The judgment of the Police Court is reversed—the defendant acquitted. By virtue also of the decision in *Wing Wo Chan's* case, the liquor seized could not be confiscated.

*C. W. Ashford* (Attorney-General), for the Crown.

*A. S. Hartwell*, for defendant.

---

### DISSENTING OPINION OF MR. JUSTICE DOLE.

This is an appeal from the Police Court, Honolulu, on points of law.

The defendant being a licensed storekeeper, was arrested for having on his premises in Honolulu, where he carried on his business, five gallons of spirituous liquors contrary to the provisions of Section 1. of " An Act to better prevent illicit traffic in spirituous liquors," passed by the Legislature of 1888.

The defendant admitted the facts charged, but defended the prosecution on the ground that they did not make a criminal offense under the laws and Constitution.

He was sentenced to pay a fine of twenty-five dollars and costs, and the spirituous liquor mentioned was confiscated.

The defendant appealed to the Supreme Court in Banco upon the following points of law, to wit:

"1. Because Section 1 of Chapter LXVII. of the Session Laws of 1888, under which the said charge is brought, is unconstitutional and void, and particularly because the same is in conflict with the provisions of Articles 1, 6, 9, 12, 14 and 47 of the Constitution.

"2. Because the Act charged against the defendant is not a criminal offense under the Constitution and Laws of the Hawaiian Islands.

"3. Because the judgment herein made against the defendant is contrary to the Laws and Constitution of the Hawaiian Islands, as being based upon an unconstitutional provision of the statute."

The enactment in question is as follows: "It shall be unlawful from and after the passage of this Act, for any person or persons conducting or carrying on any business or trade, for the carrying on of which a license is required by the Government, or for any other person except druggists, physicians and licensed dealers in spirituous liquors, to have or keep or permit on or about the premises where such business or any portion thereof is carried on, or where any portion of the stock used or kept for such business is stored, any spirituous liquors, except for the use of those engaged on the premises, and which shall not exceed at any time one-half gallon of wine or beer, or one quart of ardent spirits."

There is no question that that part of the judgment which confiscated the liquor mentioned in the pleadings must be overruled, as there is no law that authorized the forfeiture of liquor so unlawfully held.

The defendant's counsel in his appeal claims that the law above quoted is unconstitutional, and he argues that a literal construction of the words of the statute produces an absurdity; for instance, that the words, to quote only those necessary to an understanding of this question, it shall be unlawful for any person except druggists, etc., to have or keep or permit on or

about the premises, " any spirituous liquors, except for the use of those engaged on the premises, and which shall not exceed at any time one-half gallon of wine or beer, or one quart of ardent spirits," can only mean that it shall be unlawful for any person, except druggists, etc., to have on his premises any spirituous liquors which shall not exceed one-half gallon of wine, etc. ; in other words that no one can have less than that quantity unless he is a druggist, physician or licensed dealer in spirituous liquors.

This is, indeed, an absurd conclusion, and if it is the law the defendant is certainly entitled to a discharge. To reach this interpretation it is necessary to consider the words, " except for the use of those engaged on the premises," as a parenthesis, and the defendant's counsel has, for the elucidation of his point, placed them in brackets in his brief, which is not the case in the statute. If these words are read without considering them as a parenthesis, the interpretation contended for by defendant's counsel does not belong to them ; for instance, it shall be unlawful for any person except druggists, etc., to have " any spirituous liquors except for the use of those engaged on the premises and which (referring to the liquors for the use of those engaged on the premises) shall not exceed at any time one-half gallon of wine, etc." Both of these renderings are possible from the words used : the rule of interpretation compels me to adopt the one that gives the statute effect, rather than the one that leads to absurdity. (Vattel's 15 and 16 Rule.) " In construing penal statutes, we must not, by defining, defeat the obvious intention of the Legislature," (Potter's Dwarris, 247.) I have no difficulty in finding that the offense described is the having more than " one-half gallon of wine or beer, or one quart of ardent spirits," under the circumstances mentioned, and overrule the point made upon the construction of the statute.

The defendant's counsel further contends that the law, under which these proceedings have been taken, is unconstitutional in that it makes it an offense for storekeepers to do that which the rest of the community may do with impunity.

Referring to the statute, we find it reads: "It shall be unlaw-
ful * * * for any person or persons conducting or carrying
on any business or trade, for the carrying on of which a license
is required by the Government, or for any other person except
druggists," etc., to keep on the premises where such business is
carried on any liquor except for the use of those engaged on the
premises, and then not more than the quantity limited. The
words, " or for any other person," extend the application of the
statute to the whole community, "except druggists, physicians
and licensed dealers in spirituous liquors," they being the only
persons excepted by the statute. The evident object of the
Legislature in the enactment of this provision, was to prevent
such places of general resort as stores and other premises, used
for carrying on such public pursuits as require a Government
license, from being used for the illicit traffic in spirituous
liquors, by forbidding the storage of liquors in such places
either by the proprietors, or their customers or clients, or by
anyone, except only in a very limited quantity, "for the use of
those engaged on the premises." Inasmuch as it is compara-
tively easy for a person carrying on a business which attracts a
large number of customers, to evade the law against the un-
licensed traffic in liquors, under the fiction of storing liquor
belonging to his customers, as well as in other convenient ways,
the Legislature may well have considered that the success of
the law requires that its provisions should include the whole
community. Therefore the only inequality of the law is the
exclusion of druggists, physicians and licensed liquor dealers
from its provisions; but as they are authorized to sell spirituous
liquors in connection with their respective pursuits, by the
general " Act to Regulate the Sale of Spirituous Liquors," and
for perfectly obvious reasons, we need not consider this point
further. Even considering the law in its application to bear
mainly upon persons conducting some licensed business or
occupation, it is not for that reason unconstitutional. "Laws
public in their objects may, unless express constitutional pro-
vision forbids, be either general or local in their application;

they may embrace many subjects or one, and they may extend to all citizens, or be confined to particular classes, as minors or married women, bankers or traders and the like." (*Iowa R. R. Land Co. vs. Soper*, 39 Iowa, 112, and Cooley's Const. Lim., 482.)

The point is also made by defendant's counsel, that the provision of law in question is unconstitutional because liquor is property, and to make its mere possession criminal would divest it of its property character. This would be true if the law forbade all possession of liquor, inasmuch as its purchase is legally provided for. But under the police power of the State, may not the possession of liquor be fenced about with precautions in order to diminish the evils arising from an illicit traffic ? The power of the Legislature to limit the right of property in liquor as well as in other things, the possession of which is liable to abuse or to be productive of injury to society, is generally recognized. The provisions of a former liquor law in this country, making it a penal offense to give liquor to a native Hawaiian, was a limitation of the right of property in liquor ; the law compelling the erection of none but fireproof buildings within certain limits, is a limitation of the right of property in land ; the law forbidding the storage of more than ten cases of kerosene in one place, is also a limitation of the right of property. "It belongs to that department (legislative) to exert what are known as the police powers of the State, and to determine, primarily, what measures are appropriate or needful for the protection of the public morals, the public health or the public safety." (*Mugler vs. Kansas*, 123 U. S., 661.) The ground of such regulations is the public interest, and the Legislature is the judge of this. Because the Legislature has legalized the sale of spirituous liquors, it is not thereby restricted from limiting, controlling and regulating the use of such liquors in the hands of purchasers as it shall deem advisable for public order or public morals. The power of the State to prohibit the sale of spirituous liquors is unquestioned ; this includes the lesser power of regulating the use and possession of liquor when the sale is legalized. We see an instance of this power of regu-

lating the use of articles that may be legally possessed, in the restriction of the use of giant powder, which may be legally bought and sold and held in possession, and yet the use of it for taking fish is made a penal offense by law. Judge Grier, of the Supreme Court of the United States, said in his concurring decision of the *License Cases*, reported in 16 Curtis, 577: "The police power, which is exclusively in the States, is alone competent to the correction of these great evils (resulting from intemperance), and all measures of restraint or prohibition necessary to effect the purpose are within the scope of that authority." The case of *Mugler vs. Kansas*, above referred to, decided that a law which forbade anyone to manufacture liquor for his own use was Constitutional. The Court use the following language upon this point: "If, in the judgment of the Legislature, the manufacture of intoxicating liquors for the maker's own use, as a beverage, would tend to cripple, if it did not defeat, the effort to guard the community against the evils attending the excessive use of such liquors, it is not for the Courts, upon their views as to what is best and safest for the community, to disregard the legislative determination of that question." With equal truth it may be said that if, in the judgment of the Legislature, the accumulation of spirituous liquors in certain places frequented by the public tends to interfere with or to defeat the attempt to regulate and control the liquor traffic, and thereby to diminish the evils resulting from an unrestricted use of spirituous liquors, it is not for the Courts to disregard the legislative determination of the question, although it may differ from their own views as to what is necessary or expedient under the circumstances. "This Court can know nothing of public policy except from the Constitution and the laws, and the course of administration and decision. It has no legislative powers. It cannot amend or modify any legislative acts. It cannot examine questions as expedient or inexpedient, as politic or impolitic. Considerations of that sort must, in general, be addressed to the Legislature. Questions of policy determined there are concluded there." (*License Tax Cases*, 5 Wall., 469.) The case of *Mugler vs.*

*Kansas* was finally decided in the Supreme Court of the United States about the end ot the year 1887, and perhaps shows an advance of judicial sentiment in the questions raised in its adjudication; but I find in the well-known case of *Fisher vs. McGirr*, decided in the Supreme Court of Massachusetts thirty-five years ago, and reported in 1 Gray, 1–51, the following statement of law by that Court: "We have no doubt that it is competent for the Legislature to declare the possession of certain articles of property, either absolutely or when held in particular places and under particular circumstances, to be unlawful, because they would be injurious, dangerous or noxious." To include liquors in this category is not a forced application of the principle, for the Legislature may reasonably decide that the possession of liquors in certain localities and in unlimited quantities would be injurious or dangerous to public order or public morals; and if they so decide, it is not for the Courts to dispute their conclusions. "Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law, as the Legislature, under the governing and controlling power vested in them by the Constitution, may think necessary and expedient. (Shaw, Ch. J., in *Commonwealth vs. Alger*, 7 Cush., 53.)

By this "general police power of the state, persons and property are subjected to all kinds of restraints and burdens, in order to secure the general comfort, health and prosperity of the state; of the perfect right of the Legislature to do which, no question ever was, or, upon acknowledged principles, ever can be made, so far as natural persons are concerned." (Redfield, Ch. J. in *Thorp vs. Rutland and Burlington R. R. Co.*, 27 Vt., 140.) "A regulation, whatever may be its character, which is instituted for the purpose of preventing injury to the public, and which does tend to furnish the desired protection, is clearly constitutional." (Tiedeman's Limitations of the Police Power, 207.) And quoting from Judd, J., in the case of the *King vs.*

*Tong Lee*, 4 Hawn., 341-2, otherwise known as the Chinese Wash-houses Case: " Says Cooley on Constitutional Limitations, 577, 'the limit to the exercise of the police power in these cases must be this : the regulations must have reference to the comfort, safety or welfare of society.' The Act in question does purport to have reference to the comfort, safety and welfare of society. Its object, however injudiciously expressed, is plainly to repress what, in the opinion of the Legislature, tends to the dissemination and propagation of disease. We are unable to see that the Act in question violates this provision of the Constitution, as no property of the citizens is appropriated by the state, or destroyed without due process of law. * * * The judiciary is not vested with the authority to decide whether laws enacted by the Legislature are politic, wise or reasonable." It may with equal correctness be said of the legislative regulation which this Court is asked to set aside, that it " does purport to have reference to the comfort, safety and welfare of society, and that its object, however injudiciously expressed, is plainly to repress what, in the opinion of the Legislature," creates both an opportunity and a temptation to unlawfully traffic in spirituous liquors, and therefore tends to such traffic. It needs no argument to demonstrate that the ⁄unlimited accumulation of liquors in stores and offices frequented by the public, and where the public may lawfully go, would, in itself, tend to a traffic in such liquors, and so be a menace to the public welfare. There is little force in the argument that the accumulation of liquor in certain places may not be prevented by law, as the accumulation of gunpowder or burning fluids is prevented, because it is not an explosive or a dangerous combustible. Such accumulation may be prevented if it menaces society in any way; the Legislature thinks it tends to illicit traffic in liquor; if this Court doubts the correctness of the legislative conclusion, it may not for that reason interfere, if we accept the foregoing authorities. I think that I have covered, in these conclusions, substantially all of the points raised by the defendant's counsel in his argument.

The notice of appeal specifies Articles VI., IX., XII., and XIV. of the Constitution as being in conflict with the law under consideration ; these are not in conflict with Section 1 of the " Act to better prevent illicit traffic in spirituous liquors," and the defendant's counsel does not claim, in his argument, that there is such conflict; he does indeed argue against the right of seizure of liquors held against the provisions of Section 1 of the said Act, but that Section does not provide for the seizure of such liquors, and Section 5, wh·ch does provide for such seizure, has been declared void by the decision in *Wing Wo Chan & Company vs. Hawaiian Government* (*ante*, page 498) : moreover, there is nothing in the record to show that the liquors in question had been seized at all.

It therefore seems to me that the judgment appealed from should be affirmed as to the fine and costs, but that that portion of it which decrees the forfeiture of the spirituous liquors mentioned in the complaint, should be overruled.