Bradbury, J.
On April 24,1889, the plaintiff in error filed in the Circuit Court of Hamilton county a petition of which the following is a copy:
“ The relator, Ebenezer W. Poe, says that he is now and has been since the ninth day of January, 1888, the duly elected, qualified and acting auditor of the state of Ohio, and that the defendant, Fred. Raine, is now and has been since the eighth day of November, 1886, the duly elected, qualified and acting auditor of Hamilton county.
“ Relator further says that the city of Cincinnati is a city of the first grade and of the first class, and was during the period of time hereinafter referred to; and that the values of different pieces of property in said city are and, during the period of time hereinafter referred to, were equalized by an annual board of equalization, as provided in the statutes of the state.
“Relator further says that the total amounts added to and deducted from the values of different pieces of realty in said city by the said annual boards of equalization for the years 1884, 1885, 1886 and 1887, were as follows :
1884, deductions,.....$ 64,590
1884, additions,..... 32,580
1885, deductions,.....411,910
1885, additions, ..... 27,710
1886, deductions, ..... 237,930
1886, additions,..... 38,980
1887, deductions, ..... 470,010
1887, additions, ..... 40,570
“Relator further says that the said amounts added and deducted are in addition to and exclusive of the amounts added and deducted by said boards of equalization respectively to and .from the values of the new entries, new buildings, orchards, timber, ornamental trees and groves destroyed of each year, as said values were presented to them by the auditor of Hamilton county and the assessors of Cincinnati; *451 and that said deductions are also in addition to and exclusive of the amount deducted by said boards themselves for buildings, orchards, timber, ornamental trees and groves destroyed in each year, where the assessor had failed to make return of the destruction of the same and to fix a value thereto.
“ Relator further says that in each of said years, from 1884 to 1887 inclusive, said boards illegally reduced the value of real property of the city of Cincinnati, below its aggregate value as fixed by the state board of equalization and below its aggregate value on the duplicate of the preceding year, exclusive of the addition of the values of new entries and new structures of each year over the value of the buildings, orchards, timber, ornamental trees and groves destroyed of each year; and that the illegal reduction in each year of said aggregate value is the difference between the several amounts added and deducted as set forth in the figures above given.
“ Relator further says that on the sixteenth day of April, 1888, the defendant as auditor of .Hamilton county addressed a communication to him as auditor of state as provided in section 166, Revised Statutes, setting forth the facts herein-before stated as to the actions of the boards of equalization of the city of Cincinnati for the years 1884, 1885, 1886 and
1887, and requesting instructions from him as to his duty in the premises; that on the twenty-fifth day of March, 1888, relator as auditor of state, addressed a communication to the defendant as auditor of Hamilton county, in which relator expressed the opinion that the said board had acted illegally in making their deductions in excess of their additions as aforesaid in each year; and instructed him that he regard such deductions as illegal and void.
“ Relator further says that on the thirty-first day of July, 1888, said auditor of Hamilton county addressed a communication to relator in answer to the communication of relator of the twenty-fifth day of March, 1888, as aforesaid; that in said communication said auditor declined to regard as illegal the deductions, or any part thereof made during the years 1884, 1885, 1886 and. 1887 by said boards of equalization; *452 and to correct the valuation of any of the pieces of property whose values were illegally reduced by said' boards; and to charge upon the duplicate the taxes omitted by reason of said illegal deductions.
“ Wherefore relator prays that a writ of mandamus may issue commanding the defendant as auditor of Hamilton county, that he proceed according to law to correct on the duplicate for the years 1884, 1885, 1886, 1887J 1888 and 1889, the values of the property from which said deductions were illegally made; and to charge the taxes against the same according to law.”
This petition was followed by an answer and a reply, which, however, do not require any special notice, as no trial was had in the circuit court, or other proceedings had there which involved an inquiry respecting either of those pleadings-
When the cause came on for hearing in the circuit court, that court being of opinion that the issues of law arising therein should be determined before trying any issue of fact that might arise, directed counsel to argue the following questions of law:
First — Whether, assuming the allegations of the petition to be true, the auditor of state was authorized to direct and require, in the mode and manner in which it was done in this case as set forth in the petition, the auditor of Hamilton county to correct on the duplicate the valuations of .the different pieces of property from which deductions had been made and to charge against the same the taxes of the current year; and where the property had not changed hands to charge against it the taxes omitted by reason of said deduction from the time the deduction had been made.
Second — Whether assuming the allegations of the petition to be true, the action of the said boards was in violation of law.
In this connection, it was admitted by counsel that the board of equalization of the city of Cincinnati, for each of the years named in the petition, “ added to the values of new entries and new structures over the amount thereof, as fixed *453 by the several ward assessors or the comity auditor and so presented to said boards, and over and above the amounts by the said boards deducted from the values of the new entries and new structures and of buildings destroyed, as presented to them by the ward assessors and the county auditor, including the deductions made by the boards themselves where a building had been destroyed, but its destruction had not been returned by the ward assessors, an amount far greater that the deductions made from, exceeded the additions made to, the valuation of the other pieces of real estate where such boards were of the opinion that such deductions or additions should be made on account of gross inequality in the valuation thereof.”
“ And it was further admitted that the deductions, if any, made in said city of the first grade and first class on account of orchards, timber, ornamental trees and groves destroyed, were insignificant in value.”
These questions of law having been argued by counsel the circuit court held that the “law and equity of the case are [were] with the defendant,” and dismissed the action at the cost of the plaintiff.
These proceedings in the action not only appear in the journal entries of the circuit court, but were embodied in a bill of exceptions taken by the plaintiff in error; so that, whether the one method or the other was the proper mode of preserving a record thereof for review in this court, it has been successfully accomplished. This proceeding was not such a trial as the civil code contemplates, and neither party could have been required to submit to it. It bears some analogy to the reservation of a cause to this court under the old practice, a proceeding, which, under the present practice is not permitted. The plaintiff had a right to demand and require a full trial of his case before its dismissal for want of equity, and this court, ordinarily at least, cannot be required, through the medium of a dismissal without a full trial, to pass upon questions of law that may arise in a case in advance of the determination of the facts involved therein. However, as the plaintiff in error has no ground to *454 complain of this action of the court, unless it operated to his prejudice, which it could not do if his petition, does not contain facts entitling him to relief, it, therefore, becomes necessary to inquire into its sufficiency for that purpose. The petition is claimed to be fatally insufficient in two respects :
First — That the auditor of. state is without power to require the auditor of Hamilton county to correct the tax duplicate in respect to the matters mentioned in the petition, and,
Second — That the proceedings of the several boards of equalization, as the same are therein set forth, are not in violation of law.
1. That the auditor of state has no power to direct and require a county auditor to correct a duplicate unless the error sought to be corrected is one, that, under the law, the latter .officer has power to correct must be conceded; for, of course, if the county auditor has not been clothed by law with power to do an act, its performance by him cannot be required either by his superior or by courts of justice. The inquiry before us as to the authority of the auditor of state to direct the county auditor to correct the duplicate in the particulars in contention, therefore, necessarily, involves an inquiry into the power of the county auditor to perform the act thus required of him.
The several statutes giving to state and county auditors authority relating to the collection of the public revenue do not create obligations against the citizen or taxpayer; they simply provide the instrumentalities by which the revenue officers may enforce obligations imposed by the statutes which create the tax.
They are, therefore, in their character remedial; and being remedial they should be liberally construed to advance the remedy.
“ Revenue statutes being remedial in their character, are to be construed liberally to carry out the purposes of their enactment.....” United States v. Hodson, 10 Wall. *455 395: Haskel v. City of Burlington, 30 Iowa 232; Hudler v. Golden, 36 N. Y. 446.
The authority of a county auditor to correct errors of omission is to be found, mainly, in sections 1038, 1039 and 2800, Revised Statutes, which read as follows:
Sec. 1038. “ The auditor shall, from time to time, correct all errors which he discovers in the tax list and duplicate, either in the name of the person charged with taxes or assessments, the description of lands or other property, or when property exempt from taxation has been charged with tax, or in the amount of such taxes or assessments: . . . .”
Sec. 1039. “The county- auditor shall keep a book of ‘ additions and deductions,’ in which he shall enter all corrections of the duplicate, made after delivery of the same to the treasurer, which either increase or diminish the amount of any tax or assessment, as stated in the duplicate.....”
See. 2800. “ Each county auditor shall, from time to time, correct any errors which he may discover in the name of the owner, in the valuation, description, or quantity, of any tract or lot contained in the list of real property in his county.....”
The terms used in these sections are broad and general: No attempt is made to enumerate, specifically, the powers granted; to have undertaken to do so would have been hazardous; for if taxes should be omitted, by other errors or omissions than those enumerated, it might be successfully contended that no provision had been made for them. The object of the legislation was to provide against the escape from taxation, by error, of any property legally taxable; to accomplish this end, it wisely, and no doubt purposely, adopted general and comprehensive language with which to convey the needful authority,instead of attempting to enumerate in specific terms the powers conferred. Section 2800, Revised Statutes, authorizes the county auditor to correct any errors in the valuation “ of any tract or lot contained in the list of real property in his county.” If the city boards of equalization had no power to reduce the valuation of the several tracts, which were by them reduced, or exceeded the authority which they did have in relation thereto, then, the valuation as reduced was an *456 erroneous one, the first power to correct which, was bestowed upon the county auditor by the terms above quoted from Section 2800, Revised Statutes.
It is contended, however, that, if this action of the board of equalization was erroneous, the error was not clerical, but fundamental, and, as a county auditor can correct clerical errors only, his powers of correction do not extend to errors of this class. We do not doubt that the power of the county auditor to correct errors is limited to such as are clerical.
It was held by this court in Ohio ex rel. of the Sister Superior etc. v. the Commissioners Montgomery County, 31 Ohio St. 271-3, that, under what is now section 1038 Revised Statutes the county auditor could not correct fundamental errors, but only such as were clerical; and’ the rule there stated applies as well to the case now under consideration, as it did to the case in which it was announced. No attempt, however, was there made to define either a fundamental, or a clerical error, or to draw a distinction between them, the court saying, merely, that, “ The question, whether specified property is or is not subject to taxation, was not, by this section of the statute, submitted to the judgment of either the auditor of the county, or the board of county commissioners.”
In Insurance Co. v. Cappellar, 38 Ohio St. 560, the court held that where an insurance company, in making its return for taxation, deducted from its assets the re-insurance fund required by statute to be reserved by it, the error was clerical and could be corrected by the county auditor. McIl-VAINE, J., on page 574, saying in this connection: “ True, it was held in State v. Commissioners of Montgomery County, 31 Ohio St. 271, that the corrections which the auditor may make under this section are merely clerical. The error to be corrected in relation to the plaintiff’s taxes was the deduction of the re-insurance item from its credits. No fact is to be inquired into. Every necessary fact appears on the face of the return. Charge the proper rate of taxes upon the amount of credits returned without any deduction on account of the reinsurance item, and the error in the amount of plaintiff’s taxes *457 will be corrected, — clerical work merely.” This case shows that the term “ clerical error ” is not limited to snch mistakes as occur in copying or in computations. Errors by which property escapes its lawful share of taxation must of necessity be either fundamental, and thus beyond the power of a county auditor to correct, or clerical merely, and therefore within that power. The difficulty, however, lies in the attempt to distinguish them. While we are not required in this case to lay down rules, if that were possible, by which, in all cases, the character of these errors — as being fundamental or merely clerical — may be determined, yet, certainly, those only are to be deemed fundamental that pertain to the very foundation upon which a tax rests; this of course includes defects and imperfections in the law itself, and errors of judgment committed by public boards acting within the scope of their authority. But can an error be said to be fundamental and thereby placed beyond the power of a county auditor to correct, where it has been committed by a board of equalization, or by any other board or officer while acting without authority of law, or in excess thereof? We think not; and if, when we come to examine the acts of the boards of equalization which are under consideration in this action, it shall appear that they acted without warrant of law or exceeded their authority, their errors, so committed, are not in any proper sense of the term fundamental, and may therefore be corrected by the county auditor.
If a county auditor has authority to correct the duplicate in the manner contended for, then the power conferred on the auditor of state by section 166 Revised Statutes would authorize the latter officer to direct and require the correction to be made upon any reasonable construction of its terms.
This section (166 Revised Statutes) is to be found in the chapter that prescribes the duties of auditor of state, and reads as follows: “ Section 166. He shall from time to time prepare and transmit to the auditors of the several counties in the state such forms of returns to be made by them to his office, and such instructions upon any subject affecting the state finances, or the construction of any statute, the execution of *458 which devolves in part upon county auditors and which affects the interests of the state, as he deems conducive to the best interests of the state; and county auditors and all local officers acting under such laws, shall observe and use such forms and obey such instructions.”
The powers vested in the auditor of state by this section are of the most ample and comprehensive character. It is difficult to conceive a form of expression that could add to the power thus conferred. True, the authority of an auditor of state to direct and require a county auditor to restore the old valuation to the duplicate, if it had been erroneously decreased, is not given in direct and specific terms, but that such authority is embraced within this general gift of power does not admit of any serious doubt. The only remaining question is as to the power of the annual city boards of equalizations to make the deductions complained of in the petition.
The authority of these boards is to be found in the following sections of the Revised Statutes: Section 2805 provides, that city boards of equalization in cities of the class to which Cincinnati belongs, shall be “ governed by the rules, provisions, and limitations prescribed in the next preceding section for the annual county board.” The rules prescribed in that section (2804 Revised Statutes) for annual county boards of equalization are : Said board shall have the power to hear complaints and to equalise the valuation of all real and personal property, moneys, and credits within the county, and shall be governed by the rules prescribed for the government of decennial county boards for the equalization of real property: provided, that said board shall not reduce the value of the real property of the county below the aggregate value thereof, as fixed by the state board of equalization, nor below its aggregate value on the duplicate of the preceding year, to which shall be added the value of all new entries and new structures over..the value of those destroyed, as returned by the several township assessors for the current year; provided, further, that except as to new structures and structures destroyed and lands and lots brought on to the tax list since *459 the preceding decennial state board of equalization, the annual county board shall not increase or reduce the valuation of any real estate, except in cases of gross inequality, and then only upon reasonable notice to all persons directly interested, and an opportunity for a full hearing of the questions involved.”
This last section, it will be observed, refers to and adopts the rules prescribed for the government of decennial county boards for the equalization of real property; which rules are to be found in section 2814 Revised Statutes.
“ Sec. 2814. The auditor shall lay before the board the returns made by the district assessors, with the additions which he shall have made thereto; and they shall then immediately proceed to equalize such valuations, so that each tract or lot shall be entered on the tax list at its true value, and for this purpose they shall observe the following rules 1. They shall raise the valuation of such tracts and lots of real property as, in their opinion, have been returned below their true value to such price or sum as they may believe to be the true value thereof, agreeably to the rules prescribed by this title for the valuation thereof; 2. They shall reduce the Valuation of such tracts and lots as, in their opinion, have been returned above their true value, as compared with the average valuation of the real property of such county, having due regard to their relative situation, quality of soil, improvements, natural and artificial advantages possessed by each tract or lot; 3. They shall not reduce the aggregate value of the real property of the county below the aggregate value thereof, as returned by the assessors, with the addition made thereto by the auditor, as hereinbefore required.”
An examination of the whole chapter of the Revised Statutes relating to the appraisement for taxation of the real property of the state will disclose two legislative objects; one, that the decennial appraisement of real estate, as finally equalized by the state board of equalization, shall not be reduced by the subsequent action of the successive annual boards of equalization'; the other, that to this valuation there . shall be added, from year to year, the net annual increase *460 that may result from the growth and development of the county. Nor is it inconsistent with this general purpose that the annual boards may give relief where structures have been destroyed and none erected, or not enough to equal the value of those destroyed. It may be true that a fair construction of the statutes relating to that particular matter, will, in that contingency, permit a reduction from the aggre-' gate valuation on the duplicate of the preceding year, but this question is not involved in the case under consideration, and no opinion will be expressed in respect thereof. If these objects are kept in view, it will not be difficult to determine that the action of the annual boards of equalization of Cincinnati now under consideration, are illegal. These annual boards of equalization have two sets of duties to perform in reference to real estate which, while closely allied, are, in fact, independent of each other; one is to correct any gross irregularities that may exist in the appraisement value of the several lots and tracts of land within their jurisdiction, as these valuations appear on the duplicate of the preceding year; and this they are required to do, whether new structures have been erected or old ones destroyed during the preceding year or not; their power to equalize gross irregularities of this class is neither enlarged nor diminished by the erection of, or the total failure to erect, new structures; the other is to equalize the value of new structures erected, and old ones destroyed, as the same have been returned by the several assessors for the year, in order that the net increase for the year of the value of real property may be added to the duplicate of the preceding year.
A careful examination of all the statutes relating to these duties of'boards of equalization, whether they are annual or decennial, city or county boards, will disclose the care with which the legislature prohibited a reduction of-the aggregate valuation that might come before such boards for equalization, either from the decennial land appraisers or from the duplicate of the preceding year. And the care and precision whereby the legislature limited and guarded against the abuse of the power of reduction, when it came to grant it to *461 the state board of equalization by section. 2818, Revised Statutes, gives emphasis to this legislative purpose. The legislature, evidently, thoroughly comprehended the 'danger of clothing these local boards with such power — it knew the pressure that would be brought to bear upon them, and the temptations and. importunities they would be required to withstand. No specific reference to them is necessary, for they will at once suggest themselves to every one having the slightest knowledge of public affairs.
The proviso in section 2804 — the section relating to the powers and duties of these annual boards of equalization, prescribes “ That said board shall not reduce the value of the real property of the county below the aggregate value on the duplicate of the preceding year, to which shall be added the value of all new entries and.new structures over the value of those destroyed, as returned by the several township assessors for the current year.”
When this proviso is construed in connection with the legislative purpose before referred to, it becomes entirely certain that the annual boards of equalization have no power, while engaged in equalizing the valuation of the real estate on the duplicate of the preceding year, to reduce its aggregate valuation; and it is equally certain that when they have equalized the value of new structures, etc., the net valuation thereof, after allowing for structures destroyed, is to be added to the duplicate of the preceding year, and therefore cannot be made a predicate to reduce the valuation of tracts or lots of land, that, in the opinion of the board, then stood upon the duplicate at a valuation grossly too high.
It was admitted in the circuit court that the annual boards of equalization of Cincinnati, for the years mentioned in the petition, “ added to the values of new entries and new structures over the amount thereof, as fixed by the several ward assessors or the county auditor and so presented to said boards, and over and above the amounts by the said boards deducted from the values of new entries and new structures, and of buildings destroyed, as presented to them by the ward assessors and the county auditor, including the deductions made *462 by tbe boards themselves where a building had been destroyed, but its destruction had not been returned by the ward assessors, an amount far greater than the deductions made from, exceeded the additions made to, the valuation of other pieces of real estate where such boards were of the opinion that such deductions or additions should be made on account of gross inequality in the valuation thereof.”
For the purposes of this decision, this admission may be treated as a part of the petition, and its effect considered as if it was an averment thereof.
The boards of equalization, in doing what it is admitted they did do, in no wise enlarged their powers to reduce values as they found them on the old duplicate; and it is immaterial to the matter in hand whether they had or had not legal, authority to do so. If they had authority to add to the valuations which the several ward assessors had fixed upon new structures returned by them, and also power to add to the valuation fixed by the county auditor on new structures added by him, the powers concerning that part of their duties, which the law enjoins on them with a view to ascertain the increase of the property of the community for the current year, that it might be added to the duplicate of the preceding year, were pursuant to the policy before alluded to, of securing for taxation, year by year, the net increase resulting from the growth and development of the county. If' they did not have such authority, then, there is no valid ground to claim that, because they, without warrant of law, added a valuation to one man’s property, they thereby acquired power to take from another’s a portion of the valuation theretofore legally resting upon it.
It<is urged in argument that the petition is too indefinite to entitle the plaintiff to a writ of mandamus, that it does not pray for the performance of any particular act, that it leaves to the discretion of the county auditor the manner in which the reductions are to be restored, and that the court could not tell whether the county auditor had complied with its order or not if the writ was issued.
It is no doubt true that there are difficulties in the way of *463 a complete restoration of these duplicates, but they are not insurmountable. When these illegal deductions were made, the acts were without warrant of law and had no more binding force than if they had been done by any other body of men; it at once became, and has since remained, the duty of the county auditor to ignore them to the extent that they were without the jurisdiction of the boards. To correct the error committed when he transferred to the duplicate the deductions illegally made by the annual boards of equalization, was a duty enjoined on him by virtue of his office, and this duty has continued to rest upon him ever since. The record of the proceedings are or should be in his office and should provide the means of performing this duty by disclosing the proceedings of the board in making the illegal deductions. And we must assume that when directed by the court to perform this duty he will honestly and faithfully endeavor to discharge it to the best of his ability. That the performance of these duties may present difficulties requiring the exercise of a sound judgment, coupled with an extensive knowledge of the law is no doubt true, but constitutes no valid ground for an omission to perform them. He is provided by law with a legal adviser; but whether so provided or not, it is a startling proposition that a public officer may decline to perform the duties of his office, because this discharge involves the solution of complicated questions of any kind. Whatever difficulties lie in his way, he must bring to the discharge of his duties such capacity and experience as he may possess. This court is not called upon at this time, in advance of a trial in the circuit court, to suggest the manner in which these duties ought to be performed. This, to the extent that an issue is made requiring it, will, no doubt, be done by the circuit court in its judgment awarding the writ.
The only question now properly before this court is as to the sufficiency of the petition as modified by the admission of record, to which allusion has before been made, to entitle the plaintiff to some relief, and we confine the decision to that question. The petition,-as so modified, being sufficient *464 to entitle the plaintiff to some relief, it was error to dismiss the action.
The judgment of the-circuit court is therefore reversed, and the cause remanded to the circuit court for further proceedings.