## WOODS et al. v. REILLY.

### No. 9717.

Court of Civil Appeals of Texas. Austin.
April 28, 1948.

Rehearing Denied May 19, 1948.

Price Daniel, Atty. Gen., Fagan Dickson, and Chester Ollison, Asst. Attys. Gen., and Gaynor Kendall, Sp. Asst. Atty. Gen., for appellants.

George E. Shelley, Tyler & Tyler and F. A. Tyler, all of Austin, for appellee.

HUGHES, Justice.

Justin Aubrey Reilly, appellee, who is not and never has been a member of the Teacher Retirement System, seeks a writ of mandamus against Quata Woods and other appellants, who are members of the Board of Trustees of the Teacher Retirement System of Texas, to compel recognition and payment of pecuniary benefits to him for life under the Teacher's Retirement Act. Art. 2922—1, Vernon's Ann. Civ. St. as amended, Acts 1941, 47th Leg., p. 610, ch. 376.[1]

Trial was without a jury upon agreed facts. Judgment was for appellee, awarding the writ of mandamus as prayed for.

Margaret Teresa Reilly, a teacher, taught in the Austin Public Schools for about fifty-two years, from 1887 until her resignation became effective, July 1, 1939. She attained the age of 70 years on September 12, 1937.

Miss Reilly became a member of the Teacher Retirement System of Texas in 1937, and on April 14, 1938, designated her brother, Joseph A. Reilly, as the beneficiary to whom her contributions to the Retirement System funds should be paid in the event of her death before retirement.

Joseph A. Reilly died prior to June 10, 1939, on which date Miss Reilly advised officials of the Retirement System of such fact and requested that "my nephew, J. Aubrey Reilly (to) receive what may be in the treasury at the time of my death."

Formal designation of appellee as beneficiary was made by Miss Reilly June 23, 1939, which provided that he was "as my beneficiary to receive my accumulated contributions in the Teacher Saving Fund of the Teacher Retirement System in the event of my death before retirement."

On August 19, 1941, Miss Reilly made application "for a service retirement allowance to be effective as of August 31, 1941," and she elected to receive benefits under Optional Plan One, Subsection 7, Sec. 5 of the Retirement Act as amended in 1941, hereinafter described, and by this application appellee was designated secondary beneficiary thereunder.

By another instrument executed August 19, 1941, Miss Reilly re-designated appellee as the person to whom should be paid the accumulated contributions to her account in the Teacher Savings Fund, in the event of her death before retirement.

Miss Reilly died September 3, 1941. Thereafter appellee presented his claim to the Teacher Retirement System officials for payment to him for life of monthly benefits as provided in Option 1. This claim was rejected on the ground that Miss Reilly having died within 30 days of August 31, 1941, the only benefits to which appellee was entitled were the accumulated contributions which Miss Reilly had faithfully and fully paid as required by the 1937 Act, and which were credited to her account at the date of her death. Tender of this amount was refused by appellee.

This ground of rejection is brought forward in appellants' First Point.

In order to properly understand the contentions of the parties it is necessary to give a brief history of teacher's retirement legislation in this State and to set out the constitutional and statutory provisions involved.

In 1936 our 'Constitution was amended by the adoption of a new section to Article III, designated as Section 48a, Vernon's Ann. St., which reads:

"Section 48a: In addition to the powers given to the Legislation, under Section 48 of Article 3, it shall have the right to levy taxes to provide a Retirement Fund for persons employed in public schools, colleges and universities, supported wholly or partly by the State; provided that the amount contributed by the State to such Retirement Fund shall equal the amount paid for the same purpose from the income of each such person, and shall not exceed at any time five percentum of the compensation paid to each such person by the State, and/or school districts, and shall in no one year exceed the sum of One Hundred Eighty ($180.00) Dollars for any such person; provided no person shall be eligible for a pension under this Amendment who has

---

[1] This Act was the subject of amendments by the Legislature in 1943 and 1947, Acts 1943, 48 Leg., p. 676, ch. 377, and Acts 1947, 50th Leg., p. 441, ch. 248.

not taught twenty years in the State of Texas, but shall be entitled to a refund of the moneys paid into the fund.

"All funds provided from the compensation of said persons, or by the State of Texas, for such Retirement Fund, as are received by the Treasury of the State of Texas, shall be invested in bonds of the United States, the State of Texas, or counties or cities of this State, or in bonds issued by any agency of the United States Government, the payment of the principal of and interest on which is guaranteed by the United States; provided that a sufficient amount of said funds shall be kept on hand to meet the immediate payment of the amounts that may become due each year under such retirement plan as may be provided by law; and provided that the recipients of such retirement fund shall not be eligible for any other pension retirement funds or direct aid from the State of Texas, unless such retirement fund, contributed by the State, is released to the State of Texas as a condition to receiving such other pension aid."

Pursuant to this authority the 45th Legislature in 1937 enacted a Teacher Retirement Act. Acts 45th Leg., Reg.Sess., Chap. 470, p. 1178.

The Retirement System so created was established as of July 1, 1937, Sec. 2, 1937 Act. Membership in the Retirement System was to be composed of the following:

"(1) All persons who are teachers on the date as of which the Retirement System is established shall become members as of that date as a condition of their employment unless within a period of ninety (90) days after September 1, 1937, any such teacher shall file with the State Board of Trustees on a form prescribed by such Board, a notice of his election not to be covered in the membership of the System and a duly executed waiver of all present and prospective benefits which would otherwise inure to him on account of his participation in the Retirement System.

"(2) Beginning September 1, 1938, and thereafter any teacher teaching for the first time in Texas shall become a member of the Retirement System as a condition of his employment." Subsections 1 and 2, Sec. 3, 1937 Act.

"Retirement" was defined as meaning "withdrawal from active service with a retirement allowance granted under the provisions of this Act." Subsection 20, Sec. 1, 1937 Act.

"Service Retirement" was defined as meaning "retirement of a member from active service with an annuity or other benefit in lieu of an annuity at any time after reaching age of sixty (60) years." Subsection 21, 1937 Act.

Retirement for service was further regulated by Subsection 1, Sec. 5 of the 1937 Act, as follows:

"(a) Any member in service may retire upon written application to the State Board of Trustees. Retirement shall be effective as of the end of the school year then current, provided that the said member at the time so specified for his retirement shall have attained the age of sixty (60) years.

"(b) Any member in service who has attained the age of seventy (70) years shall be retired forthwith, provided that with the approval of his employer he may remain in service.

"(c) Paragraphs (a) and (b) of this subsection are limited as follows:

"Any member in service on the date upon which this Act becomes effective who has attained the age of seventy (70) years may be retired on September 1, 1938; and any member in service on the date upon which this Act becomes effective who has attained the age of sixty (60), but not seventy (70) years shall not be permitted to make application for retirement until he has been a member of the Retirement System for two (2) years."

Upon retirement for service a member was entitled to an "allowance in the form of an annuity which shall be the actuarial equivalent of the sum of his savings and the State reserves due him as a condition of his creditable service and membership in the Retirement System." Subsection 2, Sec. 5, 1937 Act.

This same section of the Act provided that the retirement allowance reserve should be derived from (1) accumulated

contributions of the member; (2) an equal amount paid by the State; and (3) payment of a prior service annuity by the State from an additional annuity reserve fund, the formula for the calculation of which is contained in the Act.

As to prior service compensation the Act further provided: "It is expressly provided that the prior-service compensation herein provided for shall be a mutual agreement on the part of the State of Texas and the teacher-member of the Retirement System, and in no event shall the failure of the State Board of Trustees to make adjustments for which total funds are not available for payment of prior-service and disability benefits be held as a liability against the State of Texas." Par. (d), Subsection 2, Sec. 5, 1937 Act.

In the event of the death of a member before retirement the amount of accumulated contributions of the member was to be paid in accordance with the statute of Descent and Distribution, unless otherwise directed by the member. Subsection 6, Sec. 5, 1937 Act.

Options as to the method of receipt or payment of benefits under this Act were provided for in Subsection 7, Sec. 5, 1937 Act, which reads:

"With the provision that no optional selection shall be effective in case a beneficiary dies within thirty (30) days after retirement, and that such a beneficiary shall be considered as an active member at the time of death; until the first payment on account of any service benefit becomes normally due, any member may elect to receive his benefit in a retirement allowance payable throughout life or he may elect to receive the actuarial equivalent at that time, of his retirement allowance in a reduced retirement allowance payable throughout life with the provision that:

"Option (1). Upon his death, his reduced retirement allowance shall be continued throughout the life of, and paid to, such person as he shall nominate by written designation duly acknowledged and filed with the State Board of Trustees at the time of his retirement; or

"Option (2). Upon his death, one-half (½) of his reduced retirement allowance shall be continued through the life of, and paid to such person, as he shall nominate by written designation duly acknowledged and filed with the State Board of Trustees at or before the time of his retirement; or

"Option (3). Some other benefit or benefits shall be paid either to the member, or to such person or persons as he shall nominate, provided such other benefit or benefits, together with the reduced service retirement allowance, shall be certified by the Actuary to be of equivalent actuarial value to his retirement allowance, and approved by the State Board of Trustees."[2]

The Forty-fifth Legislature having enacted the above legislation failed to appropriate any funds necessary for the State's participation in the teacher retirement plan. The Forty-sixth Legislature also failed to appropriate any money for this purpose. Nor until the Forty-seventh Legislature met in 1941 was the money provided and this was made available as of September 1, 1941. The result of this legislative inaction was that no benefits under the Act were paid or could have been paid prior to September 1, 1941.

The Forty-seventh Legislature in 1941 amended the 1937 Teacher Retirement Act, the emergency clause, which follows, giving reasons for its action: "The fact that Senate Bill No. 47, Acts, Regular Session, Forty-fifth Legislature, which created the Teacher Retirement System of Texas contemplated that the State of Texas would begin its contributions to said Teacher Retirement System in 1937, and in view of the further fact that the State did not provide for the financing of teacher retirement until the Regular Session of the Forty-seventh Legislature and then provided financing in a manner by which the amount that the State is in arrears on its contributions shall be paid over a period of years, thereby making it necessary to amend certain provisions of said Senate Bill No. 47 in order to enable the Teacher Retirement System to pay the same retirement benefits to beneficiaries from and after September, 1941, as such beneficiaries would have been

---

[2] Substance of these provisions as amended by Act of 1941 set forth 211 S.W.2d 599.

paid from and after September, 1941, had the State begun its contributions to the Teacher Retirement System in 1937, create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be, and the same is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted." Chap. 376, p. 610, Acts 47th Leg., Reg.Sess.

The amendments made by the 1941 Act, of concern here, are:

Subsection 1 of Sec. 5 (copied above) was amended by eliminating paragraph (c) and consolidating paragraphs (a) and (b) so as to read: "Any member may retire upon written application to the State Board of Trustees. Retirement shall be effective as of the end of the school year then current, provided that the said member at the time so specified for his retirement shall have attained the age of sixty (60) years *and shall have completed twenty (20) or more years of creditable service, and provided further that no retirement shall be effective prior to August 31, 1941.* Any member in service who has attained the age of seventy (70) years shall be retired forthwith, provided that with the approval of his employer he may remain in service." (Italics ours and indicate language added by amendment.)

Paragraph (c), Subsection 2, Sec. 5 of the 1941 Act, is an amendment of paragraph (d), Subsection 2, Sec. 5 of the 1937 Act, copied above, the amendment reading: "It is expressly provided that the prior-service compensation herein provided for shall be a mutual agreement on the part of the State of Texas and the teacher-member of the Retirement System, and in no event shall the failure of the State Board of Trustees to make adjustments for which total funds are not available for payment of prior-service benefits be held as a liability against the State of Texas. *It is further expressly provided that there shall be no claim for payments under prior-service annuities for any period of time prior to September 1, 1941."* (Italics ours and indicate language added by amendment.

The words "and disability" are omitted by the amendment.)

The definition of "Retirement", copied above, as given in the 1937 Act was amended in 1941 by elimination of the word "active".

The questions for decision are: (1) When did Miss Reilly retire? (2) Could and did Miss Reilly withdraw from active service July 1, 1939, "with a retirement allowance granted" under the provisions of the 1937 Act when no funds were then available for paying benefits thereunder; and (3) Did the 1941 Act invalidate or render ineffectual all retirements prior to September 1, 1941?

Appellants contend that the first question should be answered, "August 31, 1941," and the second and third questions answered, "No" and "Yes", respectively.

The consequence of this would be that Miss Reilly's death on September 3, 1941, would be within 30 days of her retirement, and the optional plan of allowance selected by her would be precluded under the express language of Subsection 7, Sec. 5 of both the 1937 and 1941 Acts, that "no optional selection shall be effective in case a beneficiary dies within thirty (30) days after retirement, and that such a beneficiary shall be considered as an active member at the time of death * * *," and that an active member at the time of death would under Subsection 6 of Sec. 5 of both the 1937 and 1941 Acts be a member dying "before retirement" and his benefits limited to the amount of the member's accumulated contributions.

Appellee's position is that Miss Reilly "retired" July 1, 1939, when she ceased teaching.

We have referred to the definition of "retirement" as given in the 1937 and 1941 Acts. No point is made of the deletion of the word "active" in the 1941 definition. If any significance is attached to this change it would appear that the 1941 definition would be more inclusive than the 1937 definition, in that "withdrawal from service" might mean withdrawal from inactive service, whereas "withdrawal from active service" as used in the 1937 definition is lim-

ited so as to exclude withdrawal from inactive service.

There is no doubt but that Miss Reilly was in active service when she quit teaching July 1, 1939. This much appellants concede, but they deny that her withdrawal was "with a retirement allowance granted under the provisions of this (1937) Act." Their reasoning here is that since no funds were available for paying allowances prior to September 1, 1941, it was impossible for Miss Reilly to have been paid any allowance before that time, and hence it was impossible that she "retire" before that time.

Thus appellants would make "granted" synonymous with "immediately payable." We do not agree to this construction. "Grant" is defined by Webster as, "To agree or assent to; to allow to be fulfilled; to accord; to bestow or confer." It is synonymous with "concede", which means to "agree in the idea of bestowal or acknowledgment, especially of a right or privilege * * *."

In 1 Bouvier's Law Dictionary, Rawles Third Revision, it is said that "the word 'grant' is also applied to the creation or transfer by the government of such rights as pensions."

■ We also note that the definition of "retirement" limits the allowance granted to "the provisions of this Act." "This Act," the 1937 Act, did not purport to appropriate any money for the payment of benefits conferred by it. The passage of some other act was necessary for this purpose. No other such act is referred to by the definition of "retirement" and we should not read such reference into it. We do not believe that the Legislature intended for the word "granted", as used here, to mean "immediately payable."

■ This construction of the 1937 Act is supported by consideration of the provision (also found in the 1941 Act) that any member who has attained the age of 70 years "shall be retired forthwith" unless consent of the employer is obtained for continued service. While a teacher, eligible for retirement, who has not reached the age of 70 years, might conceivably wait for the Legislature to appropriate funds for the payment of benefits before retiring, a teacher of 70 years of age has no such choice if he must be retired "forthwith." Our construction, above made, prevents a forfeiture of benefits under the circumstances noted and is certainly consistent with the overall intention of the Legislature in 1937 to improve our public school system and to reward its members of long standing.

The effect of the 1941 Act will now be considered.

In the 1937 Act the Legislature reserved the right of amendment. Sec. 13, 1937 Act.

■ Even without this reservation the rule is " * * * that the right of a pensioner to receive monthly payments from the pension fund after retirement from service, or after his right to participate in the fund has accrued, is predicated upon the anticipated continuance of existing laws, and is subordinate to the right of the Legislature to abolish the pension system, or diminish the accrued benefits of pensioners thereunder * * *." City of Dallas v. Trammell, 129 Tex. 150, 101 S.W.2d 1009, 1013, 112 A.L.R. 997.

Subsection 1 of Sec. 5 of the 1937 Act was amended by the 1941 Act as above set out; the change, of importance here, being the addition of the provision that "no retirement shall be effective prior to August 31, 1941."

Appellants and the Attorney General have, since 1941, construed this provision of the 1941 Act, read in connection with the provision of the 1937 and 1941 Acts, that no optional selection shall be effective in case a beneficiary dies within 30 days after retirement, to mean that death of a beneficiary within 30 days of August 31, 1941, voids optional selections theretofore made, and constitutes such a beneficiary an active member at the time of his death.

We have given persuasive weight to the construction made, but are convinced that it is in error and should not be followed.

This departmental construction distorts and does violence to the language used by the Legislature. It makes the Act read, "All optional selections shall be void if a beneficiary dies within 30 days of August 31, 1941," thus supplying a specific date

for the word "retirement" used by the Legislature, a word otherwise defined by the Legislature, the definition of which is not susceptible of being construed as meaning August 31, 1941, or any other specific date.

The departmental construction also would make the provision of the 1941 Act that "no retirement shall be effective prior to August 31, 1941," read, "there shall be no retirements under the 1937 Act or the 1941 Act prior to August 31, 1941."

The Legislature simply did not say this. "Effective" means "in actual operation." Many laws are enacted to become effective upon a future date. The existence of the law is requisite to its becoming effective. The law is not repealed, rescinded or cancelled by such a provision; it is merely held in suspense until the time arrives for it to be put in actual operation.

The primary purpose of the Legislature in 1941 was to lift the 1937 Act from a series of empty promises to the realism of fulfillment. This could only be done by supplying the necessary funds in such manner and at such time as, in the opinion of the Legislature, the State could afford. There is nothing in the 1941 Act to indicate that the Legislature intended to wipe out all of the incipient rights which had accrued under the 1937 Act. If this had been the purpose of the 1941 Act the Legislature could easily have repealed the 1937 Act instead of adopting the more arduous method of amending it.

The 1941 Act does not provide that a teacher could not retire under the 1937 Act or that retirements made under that Act were invalidated or void. The 1941 Act merely provided that no retirement should be "effective" before August 31, 1941. This language, to our minds, recognized the existence of prior retirements but further postponed their enjoyment until August 31, 1941. This date practically coincides with the effective date, September 1, 1941, of the allocation to and appropriation of funds for the Teacher Retirement System, which appropriation was made in "accordance with the provisions of Senate Bill No. 47, Acts of the Regular Session, Forty-fifth Legislature, 1937, and any amendment thereto * * *." Teachers

Retirement Act of 1937. Art. XX, Sec. 3, Ch. 184, p. 339, Acts 47th Leg., Reg. Sess., Vernon's Ann.Civ.St. art. 7083a note.

Also indicative of the legislative intent not to invalidate retirements made before August 31, 1941, is the language of the emergency clause of the 1941 Act, copied above. After reciting the failure of previous legislatures to make appropriations to the Teacher Retirement System, it stated that the 47th Legislature provided financing "in a manner by which the amount that the State is in arrears on its contributions shall be paid over a period of years," and that amendments to the 1937 Act were necessary in order "to pay the same retirement benefits to beneficiaries from and after September, 1941, as such beneficiaries would have been paid from and after September, 1941, had the State begun its contributions to the Teacher Retirement System in 1937 * * *."

The plain import of this language is that the State recognized its obligations under the 1937 Act and was doing what it could afford to do in remedying its prior default. The financial condition of the State evidently persuaded the Legislature that the State was not able to commence payment to beneficiaries prior to September 1, 1941. The effect of this was to forfeit all benefits accrued and payable before that time. This forfeiture should not be enlarged by judicial construction, which is not only not required but which would, if made, be directly opposed to the legislative intent as expressed above.

Of similar evidentiary value is the provision added to paragraph c, Subsection 2, Sec. 5, in 1941, providing that, " * * * there shall be no claim for payments under prior-service annuities for any period of time prior to September 1, 1941." Here too, the legislative intent is clear that prior-service annuities previously matured were not to be voided but only that payment should commence not earlier than September 1, 1941.

Also, as showing the Legislature's benevolent attitude towards teachers is paragraph c, Subsection (1), Sec. 8 of the Teacher Retirement Act, as amended in 1943, Ch. 377, p. 676, Acts 48th Leg., Reg. Sess., which provides that teachers who

have not made the required contributions to the Retirement System prior to August 31, 1943, may pay such sums and receive credit for prior service and membership service to which the teacher may be entitled for teaching prior to August 31, 1943.

It would be a strange legislative policy to grant indulgence to teachers in default and to penalize those, such as Miss Reilly, who were not in default.

We, therefore, conclude that Miss Reilly retired within the meaning of the Teacher Retirement Act on July 1, 1939; that she did not die within 30 days of retirement; that her retirement benefits were not cancelled or abrogated by the Act of 1941, but were only inoperative until September 1, 1941, and that she was within her legal rights in designating appellee as beneficiary under Option I on August 19, 1941; and that appellee is entitled to the relief prayed for, unless, as urged by appellants in their Second Point, our Constitution makes appellee ineligible to receive the benefits assigned to him by Miss Reilly.

Section 48a, Art. III, of the Texas Constitution, supra, provides that "no person shall be eligible for a pension under this amendment who has not taught twenty years in the State of Texas."

■ The annuity benefits under the Teacher Retirement System are determined by fixed standards and formulas prescribed by the law. No person not qualified under the Constitution or the statutes is originally eligible to receive benefits under the Retirement Act. Once these rights have accrued in favor of one eligible to receive them, there is no constitutional prohibition against their assignment or transfer. The Retirement Acts expressly authorize such transfer.

■ The question here is not the same as would be presented if the pension granted was a stipulated sum per month during the life of a teacher. That such a pension could not be assigned so as to be effective after the death of the teacher is obvious. The benefits here, however, are of an entirely different nature. They are certain and fixed as of the date of retirement. It is only the method of payment which is optional with the teacher.

She may elect to receive a membership annuity in an annuity payable throughout her life; or she may elect to receive the actuarial equivalent of her membership annuity in a reduced membership annuity payable throughout her life, with the optional provisions that all or one-half of such reduced membership annuity shall continue after her death in favor of some one designated by her to receive it; or that other benefits may be paid the teacher or her nominee provided that such other benefits, together with the reduced membership annuity, are of equivalent actuarial value of her membership annuity. Similar provisions are made with respect to her prior-service annuity. Subsection 7, Sec. 5, 1941 Act.

Actuarily and theoretically the benefits due a teacher are neither increased nor decreased by optional methods of payment; they remain the same. Actually they might be more or less in individual cases, as death of the teacher or beneficiary might occur before or after the expiration of their anticipated life expectancies. Standard mortality tables, however, have long been accepted by the courts as evidence in determining the normal life expectancy of a human being. 17 Tex.Jur., 739.

Art. 7123, Vernon's Ann.Civ.St. provides that for inheritance tax purposes the value of estates for life, remainders and annuities shall be determined by the "Actuaries Combined Experience Tables" at 4% compound interest. If the measure of a taxpayer's liability to the State for inheritance taxes can be based upon mortality tables, we see no reason why the measure of compensation or pensions due a schoolteacher by the State cannot be measured in the same manner.

■ Subsection 26 of Sec. 1 of the 1941 Act (Subsection 24, Sec. 1 of 1937 Act) requires the use of mortality tables in determining the "acturial equivalent." This means, then, that for all practical purposes the benefits paid out under the primary plan would be the same as paid out under any of the optional plans.

If the benefits upon retirement consisted of a lump sum in cash, no one would say that the money did not belong to the teach-

er to do with as she pleased. We see no difference in principle here. Instead of receiving cash she is given its equivalent in an annuity, the duration of which is measured by her life or by her life and the life of another, the amount of payments, of course, being directly affected by the length of the life expectancies involved.

Miss Reilly having earned and become entitled to fixed benefits provided by the Retirement Act, we see no constitutional objection to the statutes authorizing her to transfer and assign these benefits to a person of her choice.

The judgment of the trial court is affirmed.

Affirmed.