## McKean Estate

Before Sinkler, P. J., Klein, Bolger, Ladner, Hunter and Boland, JJ.

432

434

*Wilbur H. Haines, Jr.* and *J. B. H. Carter*, for exceptants.

*James E. Gallagher, Jr., Stradley, Ronon, Stevens & Young*, and *Frank C. P. McGlinn*, contra.

HUNTER, J., June 9, 1950.—The question before the court is whether a surviving spouse, by an election under section 11 of the Estates Act of April 24, 1947, P. L. 100, 20 PS §301, may treat a revocable deed of trust as a testamentary disposition, the deed having been executed March 14, 1947, and settlor husband having died July 30, 1949, after the effective date of the act.

Briefly recited, the deed is by Thomas McKean to Fidelity-Philadelphia Trust Company, trustee. It directs the payment of $416.66 per month out of income to his divorced wife, Catherine Radford McKean, until her death or remarriage, the balance of the income to settlor for life, and after his death to his second wife, Virginia Marshall McKean (who has filed this election), and after her death to Radford McKean, settlor's son by the first marriage, and upon the son's death the

principal to the son's descendants, and if none, to pay the income in perpetuity to Princeton University, St. Paul's School, Concord, N. H., and the Church of Good Shepherd, Rosemont, Pa.

The law as it existed prior to the Estates Act of 1947 is that a revocable deed vests present interests in the beneficiaries, and not mere expectancies, and it is not rendered testamentary in character because settlor reserves a beneficial life estate, and in addition, a power to revoke or modify in whole or part: Dickerson's Appeal, 115 Pa. 198; Lines v. Lines, 142 Pa. 149; Dolan's Estate, 279 Pa. 582; Shapley Trust, 353 Pa. 499; Lyon Trust, 164 Pa. Superior Ct. 140.

The adjudication contains a clear exposition of this rule of law, and nothing need be added in this respect to what the auditing judge has said.

The widow, exceptant, contends that the Estates Act of 1947 is applicable to the present trust, because the conveyance did not become effective as to the surviving spouse until the death of her husband which occurred after the date of the act; that the interest of one spouse in the property of the other is inchoate, and only on the death of one does the survivor have a vested right.

We cannot follow this reasoning. The right which the act gives to the surviving spouse is not under the conveyance but against it. Certainly, the Estates Act did not contemplate that a conveyance has more than one effective date. All interests were created in the beneficiaries of the deed at the date of its execution, as appears by the rule of law first above stated, and not at the date of settlor's death, or successively when each beneficiary came into possession and enjoyment.

The act, in section 21, provides:

"This act shall take effect on the first day of January, one thousand nine hundred forty-eight and except as set forth in Section 3 hereof, shall apply only to con-

veyances effective on or after that day. As to convey-
ances effective before that day, the existing laws shall
remain in full force and effect."

Thus, the act is prospective in all its provisions, ex-
cept those contained in section 3, which relate to re-
leases and disclaimers and not to the present contro-
versy.

The suggestion is made that "effective" has the
meaning of "operative", and as the conveyance con-
tinued in operation it was effective both on its date and
thereafter.

Section 21 makes a distinction between conveyances
"effective on or after that day [the effective date of the
act]," and conveyances "effective before that day".
As to the latter "the existing laws shall remain in full
force and effect."

The contention made would destroy that distinction,
and make both classes of conveyances subject to the
new act, contrary to the express mandate of the act
that it shall not so apply. The effectiveness of a con-
veyance refers to the interests of the beneficiaries
named therein, and the time when the title passed from
settlor to them. This conveyance became effective,
within the meaning of the act, at the date of the deed
and its delivery to the trustee, and as to it existing laws
control.

Research discloses but two decisions upon the new
act.

In Mornes v. Lawrence Savings and Trust Co., 8
Lawrence 163 (1949), a revocable deed of trust was
executed prior to the effective date of the act, and set-
tlor died thereafter. His widow attacked the deed as in
fraud of an antenuptial agreement. Judge Braham
mentioned the fact that such a deed is now circum-
scribed by section 11, and then said: "The Estates Act
relates, however, only to transactions after its date
and does not affect the present case."

In Black Estate, 122 L. I. 407, Judge van Roden of the Orphans' Court of Delaware County granted a surviving spouse a share of a tentative trust in a savings deposit, citing comment "cc" (1948 supplement) of A. L. I. Restatement of the Law of Trusts §58, which reads as follows:

*"Surviving Spouse of Depositor.* Although the surviving spouse in claiming his or her statutory distributive share of the estate of the decedent is not entitled to include in the estate property transferred during his lifetime by the decedent in trust for himself for life with remainder to others, even though the decedent reserved a power of revocation (see §57 Comment c), the surviving spouse of a person who makes a savings deposit upon a tentative trust can reach the deposit."

The court decided that while the Act of 1947 was not applicable, it was of some value in determining the state of the common law as to tentative trusts prior to its enactment where the common law had not been expressly pronounced by the courts of the Commonwealth. The court said with respect to the nonapplication of the act:

"It has been suggested by counsel for the widow that it is not the date of the deposit, but rather the date of the death of the depositor which must be considered in determining whether this new Act is applicable. With this contention we cannot agree. Section 1 (2) of the Estates Act of 1947 defines 'conveyance' as 'an act by which it is intended to create an interest in real or personal property whether the act is intended to have inter vivos or testamentary operation.' It seems obvious, therefore, that the date of the deposit is the governing date with respect to the applicability of the Act."

A construction favoring a retroactive operation of the Estates Act would raise grave constitutional questions. Existing decisions have consistently treated the

rights of beneficiaries under deeds of trust as vested interests, notwithstanding the possibility of their being divested by the exercise of a power of revocation, and it is not within the power of the legislature to take the property of one person and give it to another: Wilcox v. Penn Mutual Life Insurance Co., 357 Pa. 581; Crawford Estate, 362 Pa. 458; Borsch Estate, 362 Pa. 581.

The exceptions are dismissed and the adjudication is confirmed absolutely.

LADNER, J., June 9, 1950.—Section 11 of the Estates Act of April 24, 1947, P. L. 100, 20 PS §301.11, reads as follows:

"A conveyance of assets by a person who retains a power of appointment by will, or a power of revocation or consumption over the principal thereof, shall at the election of his surviving spouse, be treated as a testamentary disposition so far as the surviving spouse is concerned to the extent to which the power has been reserved, but the right of the surviving spouse shall be subject to the rights of any income beneficiary whose interest in income becomes vested in enjoyment prior to the death of the conveyor."

The question to be decided is whether this provision applies to a case where the spouse conveyor *executed* a revocable trust instrument *before* the effective date of the act but died *thereafter*. Ordinarily this would have been easy to determine had section 21 of the act, which fixes the extent of its applicability, been couched in less equivocal language.

Section 21 of the Act of 1947, 20 PS §301.21, reads as follows:

"21. Effective date. This act shall take effect on the first day of January, one thousand nine hundred and forty-eight and except as set forth in section 3 hereof, shall apply only to conveyances effective on or after that date. As to conveyances effective before

that day, the existing laws shall remain in full force and effect."

It will be observed that this section does not limit the applicability of the act to conveyances *executed* on or before January 1, 1948, but uses the equivocal phrase, "effective on or after that date". The Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, 46 PS §551, declares the objective of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. The word "effective", has an entirely different meaning from the word, "executed": 28 C. J. S. 839. The word "effective" has been said to denote the production of an effect or result whose continuance in the future it suggests and has been defined in the meaning of "operative". In other words, effective means in actual operation and it was so held in Kraus v. Henry, 35 N. E. (2d) 169, 170 (Ohio) ; Woods et al. v. Reilly, 211 S. W. (2d) 591-596 (Tex.).

In this case the conveyance continued to be in operation, i.e., effective from the date of its execution to the present time since it was not revoked in the life time of settlor. To my mind, therefore, it was effective both on January 1, 1948, and thereafter.

If it is urged that this interpretation is too liberal, I answer that the section invoked by the spouse is highly remedial. "Remedial statutes", says Blackstone, "are those which are made to supply such defects and abridge such superfluities in the common law as arise either from the general imperfections in human laws, from change of time and circumstances, or from the mistakes and unadvised determination of unlearned judges, or from other causes whatsoever": 36 Words & Phrases 826. A remedial statute is one which seeks to supply a public need and to remedy a public evil; Lovejoy v. Isbell, 70 Conn. 557.

The reason for the enactment of the section is made plain in the comment of the Joint State Government Commission which drafted this act. It indicates that its purpose was to preserve for a surviving spouse the right to share in the deceased spouse's estate where decedent had retained important rights of ownership at death. It is pointed out that while such right in a surviving spouse has been recognized in other States, (see Newman v. Dore, 275 N. Y. 371, Annot. and cases gathered in 12 Temple Law Quarterly 129; and 36 Michigan L. R. 496), Pennsylvania denies the surviving spouse the right to share when legal title has passed from decedent prior to his death. See Beirne v. Continental-Equitable T. & T. Co., 307 Pa. 570; Windolph v. Girard Trust Co., 245 Pa. 349; Ryniers Estate, 347 Pa. 471. The commissioners sum up the preëxisting law with the following statement:

"Indeed the situation in Pennsylvania has been such that it was stated correctly, that 'it is only the stupid husband who, against his wishes, would be forced to allow his wife to share in his personalty'. 5 Univ. of Pittsburgh Law Review, 78 at page 87."

As a consequence, under these rulings the long-standing public policy by which a spouse was guaranteed the right to take against a deceased spouse's will was, in effect, capable of being entirely nullified at the will of either spouse.

Undoubtedly the act is therefore remedial and such legislation is entitled to liberal construction: Farmers National Bank & Trust Co. v. Berks County Real Estate Co., 333 Pa. 390, 394; Mallicks' Petition, 137 Pa. Superior Ct. 139, 142; Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 58, 46 PS §558. The fact that it is in derogation of the common law is no longer any reason for strict construction since that rule was abolished by the Statutory Construction Act of 1937 as to all legislation enacted after 1937: Casey v.

Edwards, 46 D. & C. 520. I have considered also the general rule that statutes should, whenever possible, be construed prospectively but find it inapplicable for in the cases of remedial legislation the general rule is not so insistent, and such statutes are not infrequently given a retrospective effect where the language permits and such construction will promote the meaning and purpose of the legislation: Connecticut Mutual Life Ins. Co. v. Talbot, 113 Ind. 373; Ex-parte Buckley, 53 Ala. 42; People ex rel. Collins v. Spicer, 99 N. Y. 225, 1 N. E. 680; Waddill v. Masten, 172 N. C. 582, 90 S. E. 694; Haskel v. Burlington, 30 Iowa 232; State ex rel. Spokane v. DeGraff, 143 Wash. 326. Nor are we concerned here with any interference of vested rights since the income beneficiary is protected by section 11 and the others had a mere expectancy that only became absolute or vested at the death of decedent. A mere expectancy does not constitute a vested right and it has been held it may be affected by a statute passed after it arises: Burget v. Merritt, 155 Ind. 143, 57 N. E. 714. Here the trust deed only became effective to alter the rights of the surviving spouse at decedent's death, for until *then* she in reality had no rights, especially where the spouse retained the full power to revoke during life time.

For this reason also I do not regard the last sentence of section 21, which reads, "As to conveyances effective before that day [January 1, 1948], the existing laws shall remain in full force and effect", as compelling a different interpretation. The trust instrument here did not become "effective" (i.e., operative) so far as the widow was concerned, unless and until she survived settlor. Then only could it become effective to abrogate her right of election which of course could not arise until her spouse's death.

442

Moreover, there would appear to be no sound or logical reason why the legislature should have intended to deny the beneficent purpose of the act to a spouse of one who did not die until *after* its enacted change of policy. See analogous cases of Aubert's Appeal, 109 Pa. 447; Spain's Estate, 327 Pa. 226; Jeffery's Estate, 333 Pa. 15.

Being of the opinion that the language of section 21 of the Estates Act of 1947 fairly permits a construction so as to make section 11 applicable to decedents dying after January 1, 1948, even though a revocable deed may have been executed before that date, I feel we ought to so hold, and thereby advance the remedy and suppress the mischief.

I would therefore sustain the exceptions.